### MOTT et al. v. WISSLER MIN. CO.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1905.)

#### No. 561.

MANUFACTURING COMPANIES—SUPPLIES—LIENS—STATUTES—CONSTRUCTION.

Code Va. 1887, § 2485 (Code 1904, p. 1246), provides that all persons furnishing supplies to a mining or manufacturing company necessary to the operation of the same shall have a prior lien on the personal property of the company other than that forming part of its plant to the extent of money due for such supplies, and a lien on all the estate, real and personal, of the company subject to any lien by deed of trust, mortgage, hypothecation, sale, or conveyance made or executed and duly admitted to record prior to the date the supplies were furnished; and section 2486 (page 1249) provides that no person shall be entitled to the lien so given unless he shall file and procure to be recorded a sworn statement of his claim within 90 days after maturity of the last item of his bill. *Held*, that the lien specified by section 2485 attached at the time the supplies were furnished, and not at the time the claim was filed under section 2486, so that an adjudication in bankruptcy against the debtor between the date of maturity of the last item of the account for supplies and the filing and recording of the claim did not destroy the claimant's right to priority in the distribution of the bankrupt's estate.

Appeal from the District Court of the United States for the Western District of Virginia, at Abingdon, in Bankruptcy.

John C. Blair, for appellants.

A. A. Phlegar and W. A. Glasgow, for appellee.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge. The New River Mineral Company was a corporation under the laws of New York, engaged, among other things, in smelting and treating iron, and had its principal place of business at Ivanhoe, Wythe county, Va. During the months of October, November, and December, 1903, the Wissler Mining Company sold and delivered to the New River Company 1,171 tons of iron ore, worth $3,042.23, as supplies for use in the latter's operations. The last item of the claim of the Wissler Company for the ore thus furnished became due January 20, 1904. After this Edwin Einstein, Jordan L. Mott, and Emanuel Einstein, of New York,

and Hines and Blair, of Wytheville, Va., creditors of the New River Mineral Company, filed an involuntary petition in bankruptcy against said company, and on the 6th day of February, 1904, the company (having made no opposition) was, by the court in bankruptcy for the Western District of Virginia, adjudged bankrupt. The debt for $3,042.23 for supplies furnished the New River Company was duly proven against the bankrupt estate by the Wissler Company, and on the 2d day of March, 1904, a memorandum of the amount and consideration of the Wissler claim, accompanied by the affidavit of the vice president and general manager of the company, was duly filed with the clerk of the Circuit Court for Wythe county, and the same was by him on that day recorded in the record book and indexed as required by law. Thereupon, on the 4th day of March, 1904, the Wissler Company filed with the referee its proof of prior lien on the property of the bankrupt for the full amount due for supplies, as before stated, asserting that the said lien was existing, and that the debt due the Wissler Company should have priority in the distribution of the proceeds of the bankrupt's property. The petitioning creditors in bankruptcy, together with other unsecured creditors of the New River Company, objected to the preference thus sought by the Wissler Company, their grounds being, in substance, that the alleged lien did not exist; that the proceedings to obtain it had been commenced and consummated after the debtor company was adjudged bankrupt; and that the proceedings, together with the lien claimed, were void, and of no effect. The referee held that the lien of the Wissler Company was valid, and entitled the debt for supplies to priority. The objecting creditors excepted to this ruling. Upon the hearing of the exception before the District Court in bankruptcy, the action of the referee was sustained, and the case comes here by appeal on the part of the unsecured creditors, from this decision.

The Virginia statute (Code 1904, pp. 1246–1249) under which this controversy arises reads as follows:

"Sec. 2485. All conductors, brakemen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics, or laborers, and all persons furnishing railroad iron, engines, cars, fuel, and all other supplies necessary to the operation of any railway, canal, or other transportation company, and all clerks, mechanics, and laborers who furnish their services or labor to any mining or manufacturing company, whether such railway, canal, or other transportation, or mining or manufacturing company be chartered under or by the laws of this state, or be chartered elsewhere and be doing business within the limits of this state, shall have a prior lien on the franchises, gross earnings, and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or supplies; and no mortgage, deed of trust, sale, hypothecation, or conveyance executed since the twenty-first day of March, eighteen hundred and seventy-seven, shall defeat or take precedence over said lien; and all persons furnishing supplies to a mining or manufacturing company necessary to the operation of the same shall have a prior lien upon the personal property of such company other than that forming part of its plant to the extent of the money due them for such supplies, and also a lien upon all the estate, real and personal, of such company, which said last lien, however, upon all such real and personal estate shall be subject and inferior to any lien by deed of trust, mortgage, hypothecation, sale, or conveyance made or executed and

duly admitted to record prior to the date at which said supplies are furnished: provided, however, that the lien secured by this provision to parties furnishing supplies shall be subsequent to that due to clerks, mechanics, and laborers for services furnished as aforesaid: and provided, that if any person entitled to a lien as well under section twenty-four hundred and seventy-five as under this section shall perfect his lien given by either section he shall not be entitled to the benefit of the other; and provided, also, that no right to or remedy upon a lien which has already accrued to any person shall be extended, abridged, or otherwise affected hereby.

"Sec. 2486. How perfected; how enforced.—No person shall be entitled to the lien given by the preceding section unless he shall, within ninety days after the last item of his bill becomes due and payable for which such supplies are furnished or service rendered, file in the clerk's office of the court of the county or corporation in which is located the chief office in this state of the company against which the claim is, or in the clerk's office of the chancery court of the city of Richmond when such office is in said city, a memorandum of the amount and consideration of his claim, verified by affidavit, which memorandum the said clerk shall forthwith record in the deed book, and index the same in the name of the said claimant and also in the, name of the company against which the claim is. Any such lien may be enforced in a court of equity."

In this case the facts show, and it is also admitted by all the parties, that the New River Mineral Company was a manufacturing company; that the ores furnished to it by the Wissler Company were supplies necessary for the operation of the plant; and that the memorandum of the claim for these supplies was filed according to the statute, and properly recorded within 90 days after the last item of the account became due. The sole question, therefore, presented for consideration is whether the adjudication in bankruptcy intervening between the time when the last item of the account for supplies was due and the filing and recording of the claim had the effect to destroy the right of the Wissler Company to a priority in the distribution of the bankrupt's estate; and the proposition thus arising rests entirely upon the determination as to when the lien for supplies, provided by the Virginia statute, attaches—whether at the time the supplies are furnished, or not. until the claim is filed and recorded.

So far as we have been able to find, the question here has not been passed upon by the Virginia courts, and we are therefore compelled to rely upon the language of the statute itself, and such principles relating to the subject as can be gathered from other sources. It is conceded to be a well-settled principle that, where a statute declares that a lien shall attach upon the performance of a certain act or the existence of a certain condition, there is no lien until the act has been performed or until the condition exists. The Virginia statute declares that:

"All persons furnishing supplies to a mining or manufacturing company, necessary to the operation of the same, shall have a prior lien upon the personal property of such company, other than that forming part of its plant, to the extent of the money due them for such supplies, and also a lien upon all the estate, real and personal, of such company, which said last lien, however, upon all such real and personal estate, shall be subject and inferior to any lien by deed of trust, mortgage, hypothecation, sale, or conveyance made or executed, and duly admitted to record prior to the date at which said supplies are furnished."

Upon this it seems clear that, when a person has furnished supplies to a manufacturing company, necessary for carrying on its operations, he has done the act necessary, under the statute, to create a lien; and we are borne out in this view by the next section of the law, which provides for the manner in which the lien is perfected and enforced, for that section expressly refers to the lien given by the preceding section. It will be observed that the second section does not provide that the person furnishing supplies to a manufacturing company shall have a lien when he shall have filed and recorded his claim, but that he may perfect and enforce the lien "given by the preceding section" by filing a memorandum, and so forth, with the clerk. It may be asked how it is possible to perfect a thing which has not been begun. Taking the two sections together, we are led to the conclusion that the perfecting of the lien, as contemplated by the second section, was intended to be taken in connection with its enforcement; not that the act of filing and recording, under the second section, created the lien, but that it put it in a condition to be perpetuated, and, if necessary, enforced by legal proceedings. The furnisher of the supplies would thus, by filing and recording, perfect his lien by doing all that was designed —by reaching the utmost point aimed at in the beginning; that is, after the right had accrued to him, and was existing, he secured it by doing the act required under the second section.

We are aided in arriving at this conclusion by what is said in a very forceful opinion relating to the same question. In re West Norfolk Lumber Company (D. C.) 112 Fed. 767. In this case the learned judge says:

"The language of the first section of this act [section 2485] is broad and comprehensive, and plainly contemplates the existence of the lien from the time the supplies are furnished. It gives a prior lien upon the personal property of such company other than that forming part of its plant, and also a lien upon the estate, real and personal, of such company, subordinating such latter lien, however, only to liens duly admitted to record prior to the date at which the supplies are furnished; in a word, against liens acquired by deeds of trust, mortgage, hypothecation, or in case of a sale or conveyance. The time of furnishing the supplies is the period as of which the materialman is given a right of lien. The right to claim the lien arises under this section, and may be enforced at any time after the supplies are furnished; but may be lost by failure to comply with some provisions of the act giving the right. The only requirement is that the lien shall be filed 'within ninety days after the last item of the bill becomes due and payable.' If the claim is filed within that time, the lien secured relates back to the time the supplies were furnished, subject to be defeated by prior or intervening supply liens."

We believe this construction of the Virginia statute to be in thorough accord with the general doctrine that "a statute creating a lien, being remedial in its nature, is to be liberally construed, so as to give full effect to the remedy in view of the beneficial purpose contemplated by it." Amr. & Eng. Ency. of Law, Vol. 19, page 24.

A case in entire harmony with the one above cited is that of In re Dey, 9 Blatchf. 285, Fed. Cas. No. 3,871, in which the court had under consideration a statute of New Jersey which provides, in substance, that every building shall be liable for the payment of any debt contracted for labor performed or materials furnished for the

erection and completion thereof, "which debt shall be a lien upon said building and the land whereon it stands." A subsequent section of the act provides that the creditor intending to claim a lien shall, in one year after the labor is performed or materials furnished, file in the office of the county clerk his claim; and the act provides further that, if such claim is not filed within such time, the building or land shall be free from all claims for the matters in such claim. It was contended in that case, as in the present, that the lien provided by the statute did not attach until the filing in the office of the county clerk; but said the court, referring to this position:

"This is giving to the provision requiring the claim to be filed a plain repugnance to the terms of the first section, which declares that the building shall be liable for payment, and the debt shall be a lien. In a large degree it defeats the purpose of the act, which was to furnish an instant security whilst the work was in progress on which the laborers and materialmen might rely." And, further: "The first section confers a right, whether it be what is therein called the 'liability' of the building, or the 'lien' on such building and the land whereon it stands, in the sense of a legal lien. In virtue of the work performed and materials furnished the creditor has secured the right within one year to file his claim, bring suit, and sell the property, divested of all estates or incumbrances by deed or mortgage. This right is vested by statute."

We also cite in support of our position In re Georgia Handle Company, 109 Fed. 632, 48 C. C. A. 571; In re Emslie et al., 102 Fed. 292, 42 C. C. A. 350, and In re Kerby-Dennis Co., 95 Fed. 116, 36 C. C. A. 677.

The lien given by the Virginia statute, and other statutes of like character, is based upon the ground that, to enable a manufacturing establishment to obtain material and supplies, and thereby continue operations, is not only of advantage to the establishment itself, but also to its creditors generally, who are interested in its success. It is easy to discern that the purpose of the Legislature in the enactment of the supply lien law was to establish a basis of confidence upon which the seller would be willing to extend credit to the manufacturing company, and thus enable the latter to obtain, from time to time, the supplies necessary to carry on its business. This confidence would be destroyed if, after the seller had delivered his goods to the manufacturing company, it were left in the power of the latter, by an act of bankruptcy, a confession of judgment, or other act, to divert its property so as to defeat the lien intended by the law. It will be observed, in reading the statute, that section 2485 provides, in substance, that the furnisher of supplies to a manufacturing company shall have a lien upon the personal property of such company, not forming a part of its plant, and also upon all the estate, real and personal, of such company, which said last lien shall be subject and inferior to any lien by deed of trust, mortgage, etc., executed and duly admitted to record prior to the date at which said supplies are furnished. In Re West Norfolk Lumber Company, heretofore cited, this provision of the statute is commented upon in support of the position that the lien for supplies attaches at the time they are furnished, but that such lien does not affect existing liens by deed of trust, mortgage, etc.; but the said section goes

further, and provides that "the lien secured by this provision to parties furnishing supplies shall be subsequent to that due to clerks, mechanics, and laborers, for services furnished as aforesaid." Here we see that the lien is referred to as the lien "secured by this provision," and is not made to depend upon anything further for its validity.

The Legislature, in making the law under consideration, no doubt had in mind the fact that generally the delivery of supplies to a manufacturing company is a continuing transaction; that is, the supplies are furnished from time to time, and in such quantities, as the operating necessities of the company require. It would render the act almost impracticable, therefore, if it required the furnisher of the supplies to record his lien whenever he made a single delivery or shipment. Take the present case. The claim of the Wissler Company is made up of items of 51 different shipments of ore, beginning on the 3d of October, 1903, and ending on the 10th of December of the same year. We cannot believe that in such cases it was the intention of the lawmakers to require the shipper, as soon as he had made a shipment, to hurry to the clerk's office and record his lien, and, if he failed to do so, to leave him unprotected. On the other hand, we are of the opinion that the language of the statute, and the reasons which may be assigned, consistent with its purposes, warrant us in coming to the conclusion that the lien provided attaches when the supplies are furnished, and is an existing lien from that time, to be perfected and enforced, however, in accordance with the further provisions of the act.

In the course of the oral argument there was some discussion as to the relative priorities of liens of different persons for supplies furnished to the same company, but that question is not involved in this case, and is therefore not before us.

The judgment of the court of bankruptcy is affirmed.