MOORE v. GREEN et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1906.)

No. 615.

1. BANKRUPTCY—LIENS—ENFORCEMENT—PETITION TO SUPERINTEND AND REVISE.

Where, prior to the institution of bankruptcy proceedings, a general creditor brought suit in a state court to have a deed of trust on certain of the bankrupt's property declared a lien for the benefit of creditors

generally, as provided by Code W. Va. 1899, c. 74, § 2, and on institution of bankruptcy proceedings both the referee and district court held that the institution of such suit became inoperative to affect the deed because the bankruptcy proceedings were not instituted within four months subsequent to the execution thereof, petitioner was entitled to have such decision reviewed on an application to the Circuit Court of Appeals to superintend and revise.

2. SAME—PROCEEDINGS IN STATE COURT—INSTITUTION OF BANKRUPTCY PROCEEDINGS—EFFECT.

Prior to the institution of voluntary bankruptcy proceedings by a farmer, suit was instituted by a general creditor to have a deed of trust executed by the bankrupt while insolvent, but more than four months prior to the bankruptcy proceedings, declared for the benefit of all the bankrupt's creditors, as is authorized by Code W. Va. 1899, c. 74, § 2. *Held*, that the creditor prosecuting such suit thereby acquired a statutory lien on the property covered by such deed, which was not affected by the commencement of the bankruptcy proceedings under Bankr. Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448] § 64b, subsec. 5, prescribing the priority for the payment of debts, including debts owing to any person who "by the laws of the state" is entitled to priority.

3. SAME—PROCEDURE.

On the institution of bankruptcy proceedings, the bankruptcy court had jurisdiction to stay the prosecution of the suit in the state court, or in its discretion to permit the suit to proceed to judgment; the bankruptcy proceeding being suspended in the meantime only as to that portion of the estate involved in the proceedings in the state court.

4. SAME—EQUITABLE MORTGAGE—LIEN.

Where a wife from time to time before her husband's insolvency loaned him money, with the understanding that he would secure her for the same on his real estate, which he subsequently did after he became insolvent, and there was nothing in the wife's debt entitling it to special equitable consideration over other debts of the husband, such facts did not entitle the wife to an equitable mortgage operating to give her a valid lien, irrespective of a trust deed in her favor, which was not affected by Code W. Va. 1899, c. 74, § 2, authorizing a creditor of an insolvent to apply to a court of equity to vacate a preference in favor of a particular creditor, and to have the conveyance declared for the benefit of all creditors properly joining, etc.

5. SAME—TRANSFERS FRAUDULENT AS TO CREDITORS—CONSIDERATION FOR CONVEYANCE—DOWER—RELINQUISHMENT.

A postnuptial settlement made in behalf of a wife in consideration of her relinquishment of dower is only valid as against the husband's creditors to the extent of the dower released.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of West Virginia, at Martinsburg.

For opinion below, see 138 Fed. 192.

James M. Mason, Jr., for petitioner.

Forest W. Brown and A. W. McDonald (Brown, McDonald & Beckwith, on the briefs), for respondents.

Before PRITCHARD, Circuit Judge, and WADDILL and KELLER, District Judges.

WADDILL, District Judge. On the 10th day of November, 1902, George Porterfield, a farmer, filed his voluntary petition in bankruptcy in the District Court, and was on the 12th day of November, 1902,

duly adjudged bankrupt. Prior thereto, to wit, on the 11th day of June, 1902, he executed a trust deed upon his real estate to secure a debt of $12,500, in which his wife, Susan E. Porterfield, joined, and on the 13th day of the same month he executed a second trust deed to secure a debt of $4,976.73 to his said wife, being the aggregate of sundry loans made by her to him from time to time since the year 1884, and interest. On the 11th and 13th days of June, 1902, the said George Porterfield was insolvent, though his wife did not know, or have reasonable cause to believe, the existence of such condition. That the trust deed in favor of said Susan E. Porterfield was made pursuant to promises from time to time given her to secure her debt, and upon the express agreement and as the consideration for the release of her dower by joining in the deed to secure the $12,500; she having on a previous occasion waived her dower upon a like understanding to secure $2,500 on the property, which debt, however, was paid out of the proceeds of the $12,500 loan; the purpose of said latter negotiation being to extinguish all prior liens upon the property, amounting to some $5,000, and for the payment of other obligations, including an indebtedness to the state of West Virginia. The District Court proceeded with the bankruptcy case, and possessed itself of the estate of the bankrupt, consisting of the farm known as "Cassilis," mortgaged as aforesaid, which was subsequently sold in said proceedings, and the proceeds arising therefrom, amounting to $19,420.50, brought into court. An account of the bankrupt's liabilities was regularly taken, showing an indebtedness of $44,264.25, of which $25,766.20 was unsecured. After the execution of the deed of the 13th day of June, 1902, in favor of Mrs. Porterfield, to wit, on the 30th day of August, 1902, G. D. Moore, trustee under a certain deed of assignment from Eugene Baker, deceased, a creditor of said bankrupt for some $3,700, duly filed his bill in equity in the Circuit Court of Jefferson County, W. Va., assailing the deed to secure Mrs. Porterfield, because under section 2 of chapter 74 of the Code of West Virginia of 1899 it constituted a preference, and inured to the benefit of all creditors when so assailed within the period specified in said statute.

Section 2, so far as applicable, is as follows:

"Every transfer or charge made by an insolvent debtor attempting to prefer any creditor of such insolvent debtor, or to secure such a creditor, or any surety or indorser for a debt to the exclusion or prejudice of any other creditor, shall be void as to such preference or security, but shall be taken to be for the benefit of all creditors of such debtor, and all the property so attempted to be transferred or charged shall be applied and paid pro rata upon all the debts owed by such debtor at the time such transfer or charge is made; provided, that any such transfer or charge by an insolvent debtor shall be valid as to such preference or priority unless a creditor of such an insolvent debtor shall institute a suit in chancery within one year after such transfer or charge was made, to set aside and avoid the same and cause the property so transferred or charged to be applied toward the payment pro rata of all the debts of such insolvent debtor existing at the time such transfer or charge is made, subject, however, to the provision hereinafter contained with reference to creditors uniting in such suit and contributing to the expenses thereof. But if such transfer or charge be admitted to record within eight months after it is made, then such suit to be availing must be brought within four months after such transfer or charge was admitted to record. Every

such suit shall be deemed to be brought in behalf of the plaintiff and all other creditors of such insolvent debtor, but the creditor instituting such suit or proceeding, together with all creditors of such insolvent debtor, who shall come into the suit and unite with the plaintiff before final decree and agree to contribute to the costs and expenses of said suit, shall be entitled to have their claims first paid in full pro rata out of the property so transferred or charged, in preference to any creditor of such debtor who shall before final decree decline or fail to so unite, and agree to contribute to the cost and expenses of said suit, but not in preference to such creditor as may attempt to sustain the preference given him by such transfer or charge; provided further, that nothing in this section shall be taken to prevent the making of a preference as security for the payment of purchase money, or a bona fide loan of money, or other bona fide debt contracted at the time such transfer or charge was made or as security for one who at the time of such transfer or charge becomes an endorser or surety for the payment of money then borrowed. * * * "

During the pendency of this suit, other creditors having tendered their petitions therein, the bankruptcy proceedings were inaugurated as aforesaid.

A preliminary question has been presented by the respondent's motion to dismiss the proceedings, because the application to this court "to superintend and revise in matter of law" the action of the lower court is not the proper remedy to secure the relief asked by the petitioner. A careful consideration of this subject has been had by this court at its present term in Re Augusta Pottery Co. (Morgan v. First Nat. Bank of Mannington et al.) 145 Fed. 466, and for the reasons there given, which need not be added to here, the motion to dismiss should be overruled.

The real controversy in this case turns upon what was the effect of the institution and pendency of such suit in equity in the state court, how far the same affected the debt secured in favor of Mrs. Porterfield under the deed assailed, and to what extent the suit inured to the benefit of creditors other than the plaintiff and petitioners therein at the time of the bankruptcy. The bankruptcy proceedings having been commenced more than four months after the execution of the deed of the 13th day of June, 1902, in favor of Mrs. Porterfield, the deed was unaffected thereby, unless as the result of said suit in the state court. The referee and the District Court were both of opinion that the institution of such suit became inoperative to affect said deed, since the bankruptcy proceeding was not inaugurated within the four months period provided by the bankrupt act after the execution of the deed, and each accordingly held the deed securing the debt to Mrs. Porterfield a valid preference, to be paid in the distribution of the estate next after the $12,500 debt secured on the 10th day of June; and it is as to the correctness of these conclusions that we are to decide.

Two questions are presented at the threshold: What was the proper course for the District Court to pursue in dealing with the case before it, so far as the litigation pending in the state court was concerned? and, secondly, what was the legal effect of the proceeding in the state court? These questions we will consider in inverse order.

First. The proceeding in the state court was one instituted under

the statute of West Virginia, which enabled a creditor of an insolvent debtor to apply to a court of equity to vacate a preference in favor of a particular creditor, and have the conveyance declared to be for the benefit of all creditors properly joining in such suit. This suit was regularly instituted by the petitioner here, the holder of an unsecured debt of some $3,700, and the same under said statute clearly inured to the benefit of himself and all other creditors authorized thereunder to intervene in the suit; and such rights could not, and should not, be destroyed by the subsequent act of the grantor in the trust deed in favor of his wife voluntarily waiting beyond the four-month period, and then availing himself of the benefit of the bankruptcy act. Certainly such a result ought not be brought about unless the interpretation of the bankruptcy law imperatively requires it. Until the husband chose to go into bankruptcy, his creditors had no right under the bankrupt law to require him so to do, he being a person "engaged chiefly in farming or tillage of the soil," and they had to look to the state law alone to ascertain their status respecting his property by assailing the deed made in favor of his wife, which they did. They could not anticipate that he would subsequently go into bankruptcy. Having thus availed themselves of the remedy prescribed by the state statute to enforce a right secured to them consequent upon the grantor's act while insolvent—to wit, the conveyance of his property to give a preference—upon instituting such proceedings in the state court they thereby became lienors and secured creditors, pursuant to said statute, under the deed of conveyance thus executed by the bankrupt, which conveyance the law declared upon the institution of the suit inured to the benefit alike of the secured creditor in the deed and his other creditors properly joining therein. The true intent, spirit, and meaning of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], after enumerating the debts for which preference is thereby specially given, such as the payment of costs, taxes, etc., and certain labor claims, is to adopt the order of priority for the payment of debts prescribed by the state law; and by section 64b, subsec. 5 (30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], debts of the character here under consideration are plainly covered, namely, "debts owing to any person who by the laws of the state is entitled to priority." The debt secured by the trust deed of the 13th of June, 1902, to Mrs. Porterfield, the estate of whose husband is now being administered by the bankrupt court, would clearly be entitled to priority under the laws of West Virginia, under the deed securing the same, either in the state court or in the bankruptcy court sitting in said state. The debt itself has not been assailed, and the deed was apparently made in good faith, and within the time specified by the laws of the state under which the deed was given a proceeding was regularly taken, the effect of which was not to destroy the deed, but to cause the same, by reason of the insolvency of the grantor in the deed, to inure to the benefit of other creditors, as well as the beneficiary named in the deed. This was the condition existing at the time of the bankruptcy proceeding, and hence as to the property covered by that deed to the extent of the debt therein secured the bankruptcy court took

and possessed itself of such property impressed with the lien, and liable not alone to that of the beneficiary named in the deed, but subject to the rights of all persons whose interest had attached thereto by reason of the law of the state at the time of the institution of the bankruptcy proceeding. The statute (section 2, c. 74, supra, Code W. Va. 1899) has frequently been under review by the Supreme Court of Appeals of the state, and as construed by that court its undoubted meaning is that transfers and charges given or created by an insolvent shall, as to existing creditors, inure to the benefit pro rata of such creditors, and those secured, if attacked within the period and in the manner contemplated by the statute; and we think it equally clear from such decisions that the statute applies to debts and liens of the class involved in this case. Wolf v. McGugin, 37 W. Va. 561, 562, 16 S. E. 797; Carr v. Summerfield, 47 W. Va. 155, 34 S. E. 804; Herold v. Barlow, 47 W. Va. 750, 754, 762, 36 S. E. 8; Feely v. Bryan, 55 W. Va. 586, 588, 589, 47 S. E. 307. The lien here claimed is analogous to that of mechanics, materialmen, subcontractors, etc., which class of liens have been respected and enforced under the present bankruptcy act. They are given a lien by statute, but to be effective the same must be preserved and secured within a prescribed period by filing such claims, duly perfected, etc., for recordation in the designated court of the state. Being thus entitled to this inchoate lien, taking the steps to secure the benefit thereof within four months of bankruptcy has in every instance, so far as we are advised, been held not to be the taking of legal proceedings in contravention of the act, but merely doing the necessary thing—taking the essential step—to secure the existing right under the statute. In this class of claims, by reason of the work done or supplies furnished under the agreement between the parties, the statute declares that there shall exist for the amount due a lien, upon the same being properly perfected. In this case the lien arises pursuant to the statute, and under and by virtue of the deed or transfer of the debtor's property, he being an insolvent, provided the creditors assail the same within the statutory period. To say that they should lose the right thus secured by taking the step necessary to secure or make the same effective would be an anomaly. This view of the law has been steadily maintained by the bankruptcy courts under the present bankruptcy act. In re Kerby-Dennis Co., 95 Fed. 116, 36 C. C. A. 677; In re Georgia Handle Co., 109 Fed. 632, 48 C. C. A. 571; In re Emslie, 102 Fed. 292, 42 C. C. A. 350; In re West Norfolk Lumber Co. (D. C.) 112 Fed. 767; Mott v. Wissler Min. Co., 135 Fed. 697, 68 C. C. A. 335. In the latter case this court held that the lien for supplies could be filed even after bankruptcy.

Second. As to whether the relief to which the petitioner herein is entitled should have been afforded him by proceedings in the bankruptcy court, or that court should have suspended its administration so far as the portion of the assets of the bankrupt is concerned, properly applicable to the lien of the deed of the 13th day of June, 1902, in favor of Mrs. Porterfield, is largely a matter of discretion in the view we take. Either course could have been adopted. No question

of jurisdiction was involved. The bankruptcy court clearly had jurisdiction to proceed, and, if needs be, to have stayed the prosecution of the suit in the state court for the time being; but the state court likewise, at the time of the institution of the suit therein and the commencement of the bankruptcy proceedings, had and still has jurisdiction, and we think, as a matter of convenience, aside from any question of comity, the better plan would have been and is to proceed with the litigation in the state court, to the end that all creditors who may desire to do so may appear therein, and assert their rights to such fund, and in the meantime the bankruptcy proceeding would as to that portion of the estate remain in abeyance; the bankruptcy court carrying out the judgment of the state court, when duly informed thereof, in said proceeding. No inconvenience would arise from this except as to this part of the fund. The bankrupt's discharge need not be withheld. Creditors have the right to assert their claim of lien irrespective of discharge; and but for the fact of its being optional with them to appear in said suit, it would really be better for the trustee in bankruptcy to interpose therein in their behalf.

Consideration of the following subjects is desirable in view of the foregoing conclusions: First. Whether or not the respondent Susan E. Porterfield, at the time of the execution of the trust deed in her behalf on the 13th day of June, 1902, and for some years prior thereto, was then entitled to an equitable mortgage which operated to give her a valid lien, irrespective of the trust deed given in her favor, which was not the subject of attack under section 2, c. 74, of the Code of West Virginia of 1899. Secondly. Whether or not, by reason of having relinquished her contingent right of dower upon the express agreement to that effect, she should not be entitled, as a purchaser for value of such contingent right of dower, to maintain the trust deed in her favor, instead of merely holding a security over other creditors, and which was the subject of attack by them. These two views have been earnestly and ably pressed upon the court, and as to the first question the learned judge of the lower court concurred in the view that a right of equitable lien existed in favor of Mrs. Porterfield, and that the same was unaffected by the statute above referred to, and that such equitable lien was as effective as if secured by trust deed duly recorded; and in support of his view special reliance was placed upon the case of James v. Gray, 131 Fed. 401, 65 C. C. A. 385. After careful consideration of both questions and review of the authorities cited, we are unable to concur in the position either that Mrs. Porterfield is entitled to an equitable lien for the amount of her debt, or that she, by reason of her relinquishment of dower, occupies any vantage ground as against the creditors of her husband, except as to her commuted dower in the property that she surrendered.

The case of James v. Gray, 131 Fed. 401, 65 C. C. A. 385, is a decision of the Circuit Court of Appeals for the First Circuit, and a critical review of it will, we think, show what the court decided was that, under the laws of the state of Massachusetts as administered by the federal courts sitting in that state, a married woman was entitled to assert an equitable claim against the estate of her husband, either in-

dividually or against a partnership of which he was a member, and that such claim was provable in bankruptcy as an unsecured debt. Of the correctness of this position we entertain no serious doubt; but it does not follow that a claim or debt such as is held by the wife here has any of the elements of an equitable claim, entitling it to special consideration over ordinary claims and liens, or that it constitutes an equitable lien upon the husband's property. Cases of resulting trust may be found in abundance, and some where, under a parol agreement accompanied by possession, the rights of judgment creditors have been held subordinate to that of the equitable holder of the title (Floyd's Trustee v. Harding, 28 Grat. [Va.] 401; Hicks v. Riddick, 28 Grat. [Va.] 419); or suits for specific performance, where the money was paid and the purchaser placed in possession of the property and made improvements (Snyder v. Martin, 17 W. Va. 305, 41 Am. Rep. 670; Gallagher v. Gallagher, 31 W. Va. 9, 5 S. E. 297). But these cases do not support the contention here made, where the wife merely from time to time during her husband's solvency loaned him money, with the understanding that he would secure her for the same on his real estate, which he subsequently did after he became insolvent. There was nothing in the wife's debt entitling it to special equitable consideration over other debts due by the husband; and when it is sought to secure the amount by trust deed, to the exclusion of other creditors, such deed is clearly subject to the provisions of the statute authorizing it to be assailed, as it is to the recordation acts of the state. This we think clearly the law, and that the doctrine of a verbal promise to give a lien by mortgage or trust deed, constituting in effect such a lien, will be found not to have the support of the authorities either of the state of West Virginia or of the federal courts. In Atkinson v. Miller, 34 W. Va. 118, 11 S. E. 1007, 9 L. R. A. 544, it was held that an equitable mortgage, in order to affect creditors and purchasers for value without notice, must be recorded. In Feely v. Bryan, 55 W. Va. 586, 588, 47 S. E. 307, it was decided that if one loaned money to an insolvent person under an agreement that a mortgage would be made on certain property to secure the loan, and later when insolvent the borrower makes a mortgage, it does not create a preference, under section 2, c. 74, of the Code of West Virginia of 1899, as to other debts existing at the date of the mortgage. This decision is a very recent one, and will be found to contain an interesting discussion of the subject under consideration, and is, we think, conclusive against the right to set up a claim to an equitable lien here, in contravention to the rights of other creditors, and regardless of the recordation act of West Virginia. The federal courts, including this court, in at least two decisions have taken this same position; holding that the four month period prior to bankruptcy within which transfers of the bankrupt's property may be avoided cannot be enlarged and extended beyond such period, so as to prevent the assailing and invalidating of such conveyance, by means of a parol agreement such as we have in this case. In a recent case decided at the present term of this court (In re Augusta Pottery Co., supra) the court, having under review the very section of the West Virginia statute here in-

volved, decided that an agreement in writing to make a mortgage would not operate to create a lien and extend the statutory period beyond the four months and that an agreement to have such effect must necessarily be recorded (Code W. Va. 1899, c. 74, § 5; Feely v. Bryan, 55 W. Va. 589, 47 S. E. 307); and that the mortgage, notwithstanding the agreement to give the same, having been executed within four months of the bankruptcy, was unaffected thereby (In re Ronk [D. C.] 111 Fed. 154; Pollock v. Jones, 124 Fed. 163, 166, 61 C. C. A. 555; In re Dismal Swamp Contracting Co. [D. C.] 135 Fed. 415).

Coming to the question of the effect of the relinquishment of dower by Mrs. Porterfield, in support of the trust deed in her behalf, we think it well settled that a postnuptial settlement made in behalf of the wife in consideration of her relinquishment of dower is only valid to the extent of the dower released, and that Mrs. Porterfield can only claim such value instead of the debt secured in her favor, and that in this case she should be entitled to a lien arising from the sale of her husband's real estate for such commuted value of dower as of the time of the relinquishment thereof. Glascock v. Brandon, 35 W. Va. 84, 12 S. E. 1102; Herold v. Barlow, 47 W. Va. 761, 36 S. E. 8. In the latter case it is expressly held that a transfer on account of the dower of the wife was only good to the extent of the dower relinquished, and that the excess would stand for the benefit of other creditors. Strayer v. Long, 86 Va. 557, 10 S. E. 574; Davis v. Davis, 25 Grat. (Va.) 590.

It follows from what has been said that the decision of the lower court should be revised, and the cause remanded thereto, to be proceeded in therein in accordance with the views here expressed; the petitioner to recover his costs in this court.