### GOODNOUGH MERCANTILE & STOCK CO. v. GALLOWAY et al.

(District Court, D. Oregon. December 3, 1906.)

No. 4,851.

1. BANKRUPTCY—JURISDICTION OF COURT — SUITS BETWEEN TRUSTEE AND CLAIMANTS OF PROPERTY.

If a party contesting the right of a trustee in bankruptcy to property is claiming in the right of the bankrupt. the case is one for summary proceeding in the District Court as a court of bankruptcy; but, if claiming adversely, by title paramount, then it is a case for the Circuit Court or the state court, as the facts may warrant.

[Ed. Note.—Jurisdiction of federal courts in suit relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. SAME—SUIT AGAINST TRUSTEE.

Where property has passed into the possession, actual or constructive, of a court of bankruptcy as part of the estate of a bankrupt, such court has jurisdiction of a plenary suit against the trustee by one claiming a lien thereon through the bankrupt to determine his rights thereunder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 320, 324, 333.]

3. LIENS—EQUITABLE LIEN—CREATION BY VERBAL AGREEMENT.

An equitable lien upon personal property may be created by a verbal agreement, where the intention is clear to charge some particular property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Liens, §§ 26–28.]

4. BANKRUPTCY—LIENS—VALIDITY.

A verbal agreement for a lien on personal property is not required to be recorded by the statutes of Oregon, and such an agreement made in good faith to secure advances to be made to enable the borrower to carry on his business, with the knowledge of his creditors, and more than four months prior to his bankruptcy, is valid against his trustee in bankruptcy, who in such case takes only the rights of the bankrupt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 286–295.]

5. LOGS AND LOGGING—LIENS—VALIDITY—PROPERTY TO BE MANUFACTURED.

An owner of standing timber has at least a potential interest in the logs and lumber to be manufactured therefrom, which is sufficient to sus-

tain an agreement by him to give a lien on such logs and lumber to secure advances of money to be made to enable him to manufacture the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Logs and Logging, §§ 54–59.]

**6.** BANKRUPTCY—LIENS—SUIT TO ENFORCE—PARTIES.

Where the title to standing timber had been transferred to a bankrupt prior to his bankruptcy, and passed from him to his trustee, neither the vendors nor the bankrupt are necessary parties to a suit against the trustee to establish and enforce a lien on such timber and its products in the hands of the trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 448.]

In Equity. On demurrer to bill.

G. W. Buck was, on June 13, 1903, adjudged a bankrupt, and on August 22d following defendant Galloway was appointed trustee of his estate. On or about September 27, 1901, Buck entered into a written contract with Albert Lewis for the purchase from the latter of the standing saw timber on certain designated lands, and on the same day entered into another contract with Jackson Lewis for the purchase of the timber upon other lands; the consideration in each instance to be paid in deferred installments. Buck was also the owner of the standing timber on 40 acres of land that he had previously purchased from George Smittle. Being unable financially to manufacture the timber thus purchased and owned by him into logs and lumber without assistance, he applied to the plaintiff therefor, and it was agreed that plaintiff should, from time to time, advance to Buck money to be used in paying for labor necessary to cut said timber from the tree and manufacture the same into lumber, and to handle such lumber in the disposition and sale thereof, and that plaintiff should also make certain payments for Buck, as they became due, upon the contracts for the purchase of the timber; it being understood that advances in the way of merchandise might be made from plaintiff's store to Buck's employés, as they might desire. In consideration whereof, it was further agreed that plaintiff should have and hold a lien on all said timber so purchased by Buck, and on all saw logs cut from said timber, and on all lumber manufactured therefrom, to secure plaintiff in repayment to it of all sums of money and for all merchandise so advanced, and that all lumber so manufactured should be sold for plaintiff, and the money received therefrom paid to plaintiff; Buck being authorized to make sale thereof subject to the approval of plaintiff, and the purchase price in all instances to be made payable to plaintiff. And it was further agreed, should Buck fail to make sale of such lumber on satisfactory terms, then that he should turn the same, and the whole thereof, over to the plaintiff, to be sold by it, and the proceeds applied in payment of such advances.

Between January 1 and May 1, 1903, Buck entered into a written contract with the Elgin Lumber Company, whereby he agreed to sell to such company, and it agreed to buy, all the lumber that he should be able to cut during the season of 1903; to which the plaintiff assented. To this contract was annexed Buck's written order, directed to the Elgin Lumber Company, requiring it to pay the purchase price to plaintiff, which order was regularly accepted by such company. No lumber, however, was delivered to the Elgin Company, and the logs of Buck were attached on or about May 8, 1903, by the First National Bank of Elgin; it being alleged that at the time of such attachment the bank had full notice and knowledge of the claim and lien of plaintiff, and, further, that the defendant Galloway prevented the carrying out of Buck's contract with plaintiff and the Elgin Company, by wrongfully taking possession of the logs and lumber, claiming the right to dispose of them in his capacity as trustee. It is further alleged that, in pursuance of said agreement, plaintiff advanced a large sum of money and considerable merchandise, which, upon an accounting with Buck, amounted to $3,850, and for which Buck executed, on April 16, 1903, his promissory note to plaintiff, payable on demand, as evidence of such indebtedness, and that plaintiff subse-

quently made further advances, under said agreement, amounting to the sum of $390.33.

Buck manufactured, prior to May 8, 1903, about 350,000 feet of logs into lumber, and on that date had on hand 300,000 feet of logs lying in the timber, and 200,000 feet in the yard at his sawmill. By stipulation of the parties, this property was sold, and the proceeds thereof, to wit, $2,873, less $705.57 paid to laborers, are now in the hands of the trustee awaiting the result of this suit; a lien being now claimed upon the fund in place of the logs and lumber. There remains yet a large amount of saw timber of the purchases from the Lewises and Smittle uncut. About May 2, 1903, Buck assigned to plaintiff his contracts of purchase with the Lewises, for the purpose of further securing it in the payment of the demands accrued as previously set forth. So, also, was the contract with Smittle assigned for a like purpose, and plaintiff is now the holder of all such contracts. All these facts are pleaded by the bill of complaint, and it is further alleged that all the advances were made in good faith, and without intent to hinder, delay, or defraud the creditors of Buck; that such creditors had at all times full notice and knowledge that plaintiff was making such advances for the purposes as stated; that the defendant Galloway claims the right to take possession of the timber remaining, as well as to retain the possession of the funds, for the benefit of Buck's estate; and that the defendant the First National Bank of Elgin claims some interest therein; but that whatever interest or right either may have in or to such property is subordinate to the claim of plaintiff. The plaintiff prays, among other things, that a lien be declared in its favor upon the property and funds described, and for a foreclosure and sale, and an application of the proceeds and funds in payment of its demands.

To this bill of complaint the defendants interposed demurrers, assigning as grounds therefor: (1) Want of jurisdiction in this court of the subject-matter; (2) want of jurisdiction over the persons of defendants; (3) want of the statement of appropriate facts to entitle the plaintiff to relief in equity; (4) defect of parties defendant, in that Albert Lewis, Jackson Lewis, George Smittle, and G. W. Buck are necessary parties to the suit.

Ramsey & Oliver, for plaintiff.
F. S. Ivanhoe and J. D. Slater, for defendants.

WOLVERTON, District Judge (after stating the facts as above). The first objection, that there is want of jurisdiction of the subject-matter, is based upon the hypothesis that the bill is for a foreclosure, and it is urged that jurisdiction for such purpose is vested exclusively in the Circuit Court.

The District Courts of the United States are constituted, by the bankruptcy act, bankruptcy courts. To determine their jurisdiction in that relation, therefore, it is necessary to turn to the act itself, for such jurisdiction exists by reason thereof, or not at all. By Act July 1, 1898, c. 541, § 2, subd. 7, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], these courts are vested with original jurisdiction in bankruptcy proceedings, to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies with relation thereto, except as otherwise provided. The exception evidently has reference to section 23 of the act, the general scope and object of which, as indicated by its title, are to define the "jurisdiction of United States and state courts." So that section 2, subd. 7, is limited by the provision of the latter section. By this latter section the United States Circuit Courts are accorded jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants, concerning the property acquired or claimed by the trustee, in the same manner and to the same extent as

though bankruptcy proceedings had never been instituted, and such controversies had been between the bankrupts and such adverse claimants; and, further, it provides (subdivision b) that suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered by such trustee might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant.

This section has been construed by the Supreme Court, in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, a case wherein the trustee in bankruptcy sought, in the District Court sitting in bankruptcy, to set aside an alleged fraudulent sale of goods by the bankrupt; it being adjudged that the court was without jurisdiction. In the course of its consideration, the court said:

"Had there been no bankruptcy proceedings, the bankrupt might have brought suit in any state court of competent jurisdiction; or, if there was a sufficient jurisdictional amount, and the requisite diversity of citizenship existed, or the case arose under the Constitution, laws, or treaties of the United States, he could have brought suit in the Circuit Court of the United States. Act August 13, 1888, c. 866, 25 Stat. 434. He could not have sued in a District Court of the United States, because such a court has no jurisdiction of suits at law or in equity between private parties, except where, by special provision of an act of Congress, a District Court has the powers of a Circuit Court, or is given jurisdiction of a particular class of civil suits. * * * Congress, by the second clause of section 23 of the present bankrupt act, appears to this court to have clearly manifested its intention that controversies, not strictly or properly part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the District Courts of the United States 'unless by consent of the proposed defendant,' of which there is no pretense in this case."

Thus does the law leave the parties to litigate as to those matters falling within the purview of the section in the courts that have jurisdiction, notwithstanding the adoption of the bankrupt act. If there be diversity of citizenship, or if the Constitution, laws, or treaties of the United States are called in question, the Circuit Courts of the United States would have jurisdiction either at law or in equity, otherwise, the state courts would constitute the proper forum for adjudication; the measure being whether the bankrupt could have brought a proceeding concerning the property had there been no adjudication in bankruptcy. As to these matters, however, the District Court may entertain jurisdiction on condition of the consent of the defendant; that is, the party claiming the property acquired by the trustee adversely to the latter.

In another case (White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183) decided at the same term of court as the Bardes Case, it was held that:

"After an adjudication in bankruptcy, an action of replevin in a state court cannot be commenced and maintained against the bankrupt to recover property in the possession of and claimed by the bankrupt at the time of that adjudication, and in the possession of a referee in bankruptcy at the time when the action of replevin is begun."

This was an action for the legal custody of the goods, and did not concern the trial of the title thereto. The principle upon which the

case rests is that property in the custody of a court of the United States cannot be taken out of that custody upon any process from a state court. And it was further held that the District Court sitting in bankruptcy had jurisdiction by summary proceedings to compel the return of the property seized; the same having been taken by writ from the custody of the trustee.

A later case (Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405) is illustrative. That was a summary proceeding upon order to show cause why the bankrupt, or his agent in possession for him, should not turn over certain moneys alleged to be the property of the estate. The question came up whether a plenary suit or action was the remedy to recover possession, or whether the court had power upon summary proceeding to require the bankrupt, or his agent holding for him, to account to the trustee for the property withheld from the latter. The court held that the filing of a petition in bankruptcy is a caveat to all the world, and in effect an attachment and injunction, and, on adjudication, title to the bankrupt's property becomes vested in the trustee, with actual or constructive possession, and placed in the custody of the bankruptcy court; and it was further adjudged that the court—that is, the trustee for it or the law—having the custody, could appropriately deal with parties disturbing such custody, so as to secure the rightful possession in the trustee for the due and regular administration of the estate. It is clear from the court's discussion, however, that had there been an adverse holding or claim—that is, a holding with claim of right or title adverse to the trustee—the case would have been different. And thus it is apparent that the court differentiates between a case where the party claims in the right of the bankrupt and one where he claims adversely to the latter, or to his trustee, who succeeds to all his rights and interests.

An earlier case (Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814) is also illustrative. There the bankrupt, nine days before the filing of the petition in bankruptcy, made a general assignment for the benefit of his creditors; but, subsequent to the filing of the petition, the assignee sold the property to Bernheimer, a third party. Upon the application of certain creditors, interposed after adjudication in bankruptcy, the court directed the marshal to take charge of the property, and that notice be given the purchaser to appear and set forth his claim thereto. The purchaser came in, and the property rights were accordingly adjudicated, and held to be in the trustee. The court determined that, as the property was not held by the assignee under any claim of right in himself, but under a general assignment, which was in itself an act of bankruptcy, and, as the sale to Bernheimer was made after, and with knowledge of, the petition in bankruptcy, the latter had no title superior to that of the bankrupt's estate, and hence that the District Court had jurisdiction in a summary proceeding to determine respecting the conflicting rights of the parties. The court, however, alluded to the fact with some emphasis that Bernheimer had consented to the form of proceeding, thus bringing the case within the purview of subdivision "b" of section 23.

These cases indicate, with more or less directness, the principle on which the District Court should and ought to take jurisdiction in

matters involving the property rights incident to the estate of the bankrupt. If the party contesting the right of the trustee to the property is claiming in the right of the bankrupt, the case is one for summary proceeding; but if claiming adversely, by title paramount, then it is a case for the Circuit Court or the state court, as the facts may warrant.

The case of Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, presents a different phase of the controversy. There the trustee brought suit, in the District Court sitting in bankruptcy, against third parties claiming a lien upon goods alleged to be the property of the bankrupt, but which had been turned over by the receiver in bankruptcy, though without an order of court or other authority, to such parties to be subjected to their claim of lien. The trustee brought a plenary suit to determine the validity of the lien and his right to the possession of the property freed of the alleged incumbrance. The jurisdiction of the court was challenged, and it was held that, quoting from the head note:

"The bankruptcy court has jurisdiction of a proceeding in the nature of a plenary action brought by the trustee to determine controversies in relation to property held by the bankrupt or by other parties for him, and the extent and character of liens thereon."

In the course of the opinion, the court alluded to the Bardes Case, and was of the view that it did not determine the authority of the District Court to entertain jurisdiction of a proceeding instituted for the adjudication of rights in or a lien upon property which had come into the possession of the bankruptcy court; and further on it says:

"We think the result of these cases is, in view of the broad powers conferred in section 2 of the bankrupt act, authorizing the bankruptcy court to cause the estate of the bankrupt to be collected, reduced to money and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same and the extent and character of liens thereon or rights therein."

The relation of the parties in the case at bar is the exact reverse of that of those in that case, but the principle involved appears to me to be the same. The purpose is to determine the validity of the alleged lien claimed upon the property of the bankrupt. The fund derived from the sale of the lumber and logs has passed into the hands of the trustee, and, although the contracts for the timber with the Lewises are in the hands of plaintiff by assignment as collateral, yet the corpus of the lien, to wit, the timber, whatever may be the interests of the bankrupt, has passed into the constructive possession, at least, of the trustee, so that the whole property is within the possession, actual or constructive, of the bankrupt court, and the suit is brought in that court, by the lienholder, to determine the correlative rights of the parties. The plaintiff does not in any way hold, or assume to hold, adversely to the trustee in bankruptcy, and I see no reason why a plenary suit may not be maintained by the lienholder against the trustee to determine those rights, as well as by the trustee against the lienholder. The suit

is plenary in either case, and the court is in the possession of the property involved. That the case is in name one for a foreclosure does not in itself determine the jurisdiction. The court will not foreclose in the way that foreclosure proceedings are finally adjusted, but it will declare the lien, if any exists, and leave the trustee to dispose of the property, and the assets will be marshaled in accordance with the relative rights of the creditors of the estate; the legitimate lienholder being preferred, of course, to the general creditor. This disposes of the question of jurisdiction.

It is next insisted that, under the allegations of the bill, the plaintiff has no lien, or, in other words, that no mere verbal agreement that a party shall have and hold a lien is competent to impose upon the property such an incumbrance. Whatever may be the rule as it relates to realty, I shall only inquire for the present, as it concerns personal property.

To create an equitable lien, it is essential that there be a contract showing an intention to charge some particular property, and it is said by the authors of the American and English Enc. of Law (volume 19, p. 14) that:

"Such contracts will create a lien on personal property though only verbal."

Mr. Pomeroy gives consideration to the subject as follows:

"The doctrine may be stated, in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property." 3 Pomeroy's Equity, § 1235.

The general doctrine as here announced has the apparent sanction of the Supreme Court of the United States, in Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, and Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865, and is expressly approved in Chattanooga National Bank v. Rome Iron Co. (C. C.) 102 Fed. 755. In the latter case, while there was a writing, there was no delivery of the personalty sought to be charged, and the point was made that there was a want of delivery, thus differentiating the transaction from a pledge; but the court held that, by reason of the doctrine thus expressed, the lien attached notwithstanding there was no delivery.

Another objection urged against the validity of the alleged lien is that it was not recorded. The answer to this is that the law does not require such an agreement to be recorded. What it does require to be recorded is any mortgage, deed of trust, or other instrument of writing intended to operate as a mortgage of personal property, and the penalty denounced against the nonrecording of such an instrument, unless its execution is accompanied by an immediate delivery and an actual and continued change of possession of the property, is that it shall be void as against subsequent purchasers and mortgagees

in good faith and for a valuable consideration. Sections 5630, 5631, and 5633, B. & C. Comp. Or. Another statute, namely, section 788, subd. 40, B. & C. Comp. Or., prescribes that every sale of personalty capable of immediate delivery, and every assignment of such property by way of mortgage or security, unless accompanied by delivery and followed by actual and continued change of possession, creates a presumption of fraud as against creditors or subsequent purchasers in good faith and for a valuable consideration, disputable, however, by making it appear on the part of the person claiming under the sale or assignment that the same was made in good faith, for a sufficient consideration, and without intent to defraud.

It has been determined that:

"Except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens, or incumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. * * * He takes the property in the same 'plight and condition' that the bankrupt held it." Yeatman v. Savings Institution, 95 U. S. 764, 24 L. Ed. 589.

See, also, Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, and Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075.

So it is said, in the recent case of Security Warehousing Co. v. Hand, 143 Fed. 32, 74 C. C. A. 186, cited and much relied upon by counsel for defendants, that:

"Liens that remain undisturbed are those that were good against both the bankrupt and his creditors immediately preceding the adjudication."

The complaint here, however, shows, not only good faith in agreeing with Buck for the lien, but in advancing the money for labor and supplies necessary for the manufacture of the timber into logs and the logs into lumber. Not only this. The bill further sets forth that the creditors "had full notice and knowledge all the time" of said agreement, thus bringing home to them the very conditions contemplated by the statute touching sales and the mortgaging of personal property. As a legal proposition, it is quite true that section 67a of the bankruptcy act "vitiates as liens all claims which, for want of record or for other reasons, the bankrupt's creditors might have avoided as liens; that is, no secret liens or equities shall prevail against the trustee that were not good against the general unsecured creditors represented by the trustee." But the bill puts the matter beyond the local statute, and shows good faith on the part of plaintiff, and notice and knowledge on the part of the creditors, which, if true in fact, would subordinate the claims of the creditors to that of plaintiff. If the creditors or the trustee can show to the contrary, that will be a matter of defense under a proper answer. I am passing on the complaint only for the present.

The two recent cases of Morgan v. First National Bank, 145 Fed. 466, 76 C. C. A. 236, and Moore v. Green, 145 Fed. 472, 76 C. C. A. 242, are controlled by a local statute peculiar to West Virginia, and do not seem to me to be applicable to the present controversy.

A further suggestion is that the arrangement with the Elgin Lumber

Company could not take effect by relation back to the verbal agreement, so as to relieve it of the objection that the lien was procured within four months of the adjudication in bankruptcy. While it is alleged this arrangement was in furtherance of the verbal agreement, it was not the transaction that conferred the lien. The verbal agreement did that, if one attached. Furthermore, no lumber came into the hands of the Elgin Lumber Company, so that the arrangement can scarcely be relied upon as an aid to the agreement in the way of imposing a lien. Having been set out by the complaint, it merely shows the good faith in which the agreement was being carried out between the parties.

Another suggestion is that it was incompetent for the parties thus to impose a lien upon after-acquired property. It is sufficient answer to this that Buck had at least a potential interest in the logs and lumber, and it is believed that it was competent for him to affix the lien, looking first to the manufacture of such logs and lumber; the timber out of which the product was to be manufactured being his by indisputable purchase.

What I have said relates to the logs and lumber; they being unquestionably personal property.

It is insisted that the standing timber is realty, and that in any event no lien attached thereto. But it is not necessary that I decide that question now. It is sufficient, in view of the demurrers, that the bill states a cause of suit; and this it does, at least as it relates to the logs and lumber, and the funds derived therefrom. The question whether the timber is realty under the law, and whether plaintiff's alleged lien attached thereto or not, may be determined at the final hearing.

The demurrers also go to the want of necessary parties. The title of the Lewises and that of Smittle in the timber, however, had passed to Buck, and from Buck to the trustee. The vendors and Buck, therefore, having no interest remaining in the property, it was not essential that they be made parties.

The judgment of the court will be that the demurrers be overruled.