In re CHEATHAM.

(District Court, W. D. Kentucky. January 19, 1914.)

1. BANKRUPTCY (§ 400*)—EXEMPTIONS—SETTING APART.

Generally a trustee in bankruptcy can only allot to the bankrupt the property exempt under the state law, and thereafter neither the trustee nor the bankruptcy court has any further authority over it, and creditors having lawful liens thereon must enforce them in the state courts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

2. BANKRUPTCY (§ 400*)—EXEMPTIONS—SETTING APART.

The action of the trustee in bankruptcy, in allotting to the bankrupt the property exempt under the state law, may be excepted to, and the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

propriety of his action, either as to whether the exemption was lawful or whether too much or too little was set apart, may be finally determined by the bankruptcy courts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

3. BANKRUPTCY (§ 400*)—SALES OF PROPERTY—SETTING ASIDE.

Where it appeared that confusion resulted on a sale by a trustee in bankruptcy from the acceptance of one bid and the subsequent acceptance of another, and possibly even more confusion from the advertisement indicating an intention under certain conditions to sell the homestead, the referee did not err in setting aside the sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

4. BANKRUPTCY (§ 400*)—EXEMPTIONS—SETTING APART.

Under Ky. St. § 1702, providing that there shall be exempt from sale for the debts of the owner so much land, including the dwelling house and appurtenances owned by the debtor, as shall not exceed in value $1,000, section 1703 providing that, before a sale under execution, attachment, or judgment of land occupied as a homestead, the officer shall cause such part thereof which may be selected by the debtor, as shall not exceed in value $1,000, to be valued under oath and set apart to the debtor, and section 1705 providing that, where real estate levied on, or sought to be subjected to the payment of any debt, or liability, is of greater value than $1,000, and not divisible without great diminution of its value, it shall be sold and $1,000 of the proceeds paid to the debtor to enable him to purchase another homestead, a referee in bankruptcy had no power to order the sale as a whole of over 180 acres of land, in which the bankrupt had a homestead exemption, on the ground that to lay off a homestead in kind would materially impair the vendible value of the land.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

In Bankruptcy. Proceeding in the matter of Joe K. Cheatham, bankrupt. On petitions for a review of orders of the referee setting aside a sale by the trustee and ordering a resale. Order setting aside sale affirmed, and case remanded, with directions.

W. C. McChord, of Springfield, Ky., for creditors.
S. A. Russell, of Lebanon, Ky., for bankrupt.

EVANS, District Judge. This case comes before us upon two petitions for a review by the court: First, of an order of the referee entered on December 13, 1913, setting aside the sale made by the trustee on November 22, 1913, to Mrs. Zadia Cheatham, wife of the bankrupt, of 160½ acres of land scheduled by him, and ordering the trustee again to sell not only the 160½ acres but also 28 acres which had been set apart by the trustee to the bankrupt as a homestead; and, second, for the review by the court of the order of the referee made and entered on said date in effect setting aside and vacating the action of the trustee and the appraisers in the allotment to the bankrupt of the 28 acres. We will dispose of both petitions in this opinion.

The chief source of the troubles which have arisen has been the attempt to sell that part of the lands which was allotted by the trustee to the bankrupt as a homestead, and which is exempt from his debts under the law of Kentucky. Section 1702 of the Kentucky Statutes,

among other things, provides that there shall be exempt from sale for the debts of the owner so much of the land, including the dwelling house and appurtenances owned by the debtor, as shall not exceed in value $1,000; and section 1703 provides that the officer who is to sell the land of the bankrupt for the payment of any debt shall cause such part of the land, which may be selected by the defendant not to exceed in value $1,000, to be valued under oath and set apart to him.

The bankrupt in due form set up his claim to what is usually and compendiously called his homestead exemption in the lands described in his schedules in this proceeding. The trustee, with the assistance of three appraisers duly sworn, allotted and set apart to the bankrupt 28 acres of the land; the dwelling house being upon the land thus allotted. After this was done, 160½ acres of the land remained to be sold. Instead of limiting his sale to the 160½ acres, the trustee, doubtless in accordance with the referee's order, in his advertisement stated that:

"Said property will be offered in two tracts and as a whole after first laying off the homestead of $1,000 in value, including the house and appurtenances, and, if the property does not bring a sufficient amount to pay the lien debts, it will then be offered in two tracts, and then as a whole, including the homestead, and sold in the manner so as to realize the most money."

This advertisement fixed the date of the sale on November 22, 1913. On the day before, namely, on the 21st of November, the homestead had been set apart to the bankrupt by the trustee and the appraisers.

[1, 2] Since the Supreme Court decided the case of Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, there has been no doubt that a sale of a homestead by a trustee is rarely warranted. Generally speaking, all the trustee can do is to allot to the bankrupt the property exempt under the state law. Of course the action of the trustee in doing this may be excepted to, and the propriety of his action, either as to whether the exemption was lawful or whether too much or too little of the property of the bankrupt had been set apart, is open to final determination by the bankruptcy courts; but, after the property is set apart as exempt, neither the trustee nor the bankruptcy court has any further authority over it. So that here, while any controversy respecting the right to the homestead or as to whether too much or too little land was set apart as being worth more or less than $1,000 may be settled in this proceeding, in no event could the trustee sell the homestead unless in the one contingency provided for by section 1705 of the Kentucky Statutes, which will presently be considered. If certain creditors, as claimed, have a lawful lien upon the land to be allotted to the bankrupt as a homestead, they must enforce that lien, if enforceable at all, in the state court having jurisdiction; and the latter part of the opinion in Lockwood v. Exchange Bank, above cited, points out the right, under appropriate conditions, to delay the bankrupt's discharge for a reasonable time. So that, if the 160½ acres does not bring enough to pay the secured creditors, the homestead may be open to their assertion of a lien thereon in a state court.

[3, 4] Should the sale of the 160½ acres have been set aside by the referee? is one of the questions to be considered. The court has very carefully examined this phase of the case, and as it appears to be clearly shown that confusion resulted from accepting at first the bid of $20 per acre therefor made by Tobin and afterwards accepting another bid from the bankrupt's wife, and as there was possibly even more confusion resulting from the advertisement of the trustee's purpose, under certain conditions, to sell the homestead, we have concluded that those parts of the order of the referee which set aside the sale of the 160½ acres made on November 22, 1913, should be affirmed, and it will be so ordered. But those parts of the referee's order of December 13, 1913, which direct "the trustee to resell this property on January 17, 1914, as a whole, it appearing that to lay off a homestead in kind would materially impair the vendible value of the land" being beyond his power, should be reversed and set aside, and any order for a sale of the bankrupt's lands must altogether omit any provision for the sale of any part of the homestead as the same may be finally allotted and assigned to the bankrupt.

2. It remains to be considered whether the referee's order, which set aside the allotment to the bankrupt of the 28 acres as a homestead, was erroneous. In reaching his conclusion, the referee did not act upon the idea that the testimony showed that the 28 acres exceeded in value the sum of $1,000, but he put his ruling upon the sole ground, as we have seen, that it appeared that to lay off a homestead in kind would materially impair the vendible value of the land.

Counsel for the opposing interests contends that the referee's order should be upheld under section 1705 of the Kentucky Statutes, which is in this language:

"Where the defendant in the execution, attachment or action owns real estate which is levied on or sought to be subjected to the payment of any debt or liability, and the same, in the opinion of the appraisers, is of greater value than one thousand dollars, and not divisible without great diminution of its value, then the same shall be sold under the execution, attachment or judgment, and one thousand dollars, of the money arising from the sale shall be paid to the defendant to enable him to purchase another homestead. But there shall be no sale if the land, when offered, does not bring more than one thousand dollars."

And counsel cites Sansberry v. Simms, 79 Ky. 527, and Warren's Adm'r v. Warren, 126 Ky. 692, 104 S. W. 754, 1199. We have examined both of these cases and find that in each the property consisted of a house and lot. In neither case was the property divisible; its very nature precluding such treatment of it. We do not, therefore, find anything helpful in either of the cases just named, but in Duff v. Duff, 145 Ky. 376, 140 S. W. 540, the Court of Appeals dealt with a case where the property involved was 177 acres of land. After setting forth in hæc verba section 1705 of the Kentucky Statutes, as we have copied it above, the court, noting that exceptions had been filed to the allotment of the homestead upon the ground that to allot the homestead in the way the appraisers had done would depreciate the value of the land, said:

"It will be observed that the statute does not allow a sale of the property unless it is 'not divisible without great diminution of its value.' The statute which gives the homestead right was so framed for the reason that the homestead is the home of the family, and it was intended that the home should not be broken up unless necessary to prevent great loss. The law favors the partition of land rather than its sale for a division of the proceeds, and there are peculiar reasons why this rule should be applied to the home of a widow and infant children. The proof shows the land is worth $1,500 or $2,000, and no particular facts appear requiring a sale. If a sale may be ordered of a tract of 177 acres of land when the improvements are worth only $300, then it is hard to imagine a case where the whole tract may not be sold, and the widow required to take $1,000 in money instead of the homestead which the law gives her. On the face of the record, we see no objection to the division which the commissioners made. The two tracts are left in good shape, and the adult heirs will be entitled to their interest in the homestead at the termination of the particular estate of the widow and infant child."

It will be seen from reading the opinion that that case, except that the husband was dead, very closely resembled the one before us, and we have concluded that the referee was in error in setting aside the allotment of the homestead upon the grounds stated by him in his order. We think the Duff Case is conclusive of this one, and that the right of selection given the debtor by section 1702 ought not to be destroyed by any construction of section 1705, unless in cases where the stress is much stronger than it is in this instance. But, as a wrong reason may not make erroneous an order which is sustainable upon other grounds, we proceed to consider whether the allotment was improper upon any reason apparent in the record. Certainly the testimony is conflicting on the question of the value of the 28 acres, and it is not altogether clear upon which side the preponderance rests. It may be that further testimony will be helpful, and as the referee does not seem to have considered this phase of the matter at all, notwithstanding his better opportunities for knowing the witnesses, we have concluded, pending the petition for a review of the orders respecting the allotment of the homestead, to remand the case to the referee, with directions to consider the testimony bearing on the value of the 28 acres, and also to hear any further testimony offered by either side on that subject. Whether his conclusions be one way or the other, his report, with any new evidence heard, will enable us to determine the questions remaining to be disposed of under the pending petition. If the 28 acres be found not to exceed $1,000 in value, there will be no difficulty in passing on the petition for a review. If, however, its value is found to exceed $1,000, it may be that the acreage can be reduced sufficiently by taking off the number of acres requisite to that end along the southern line of the 28 acres as shown on the plat.

An order will be entered in accordance with this opinion.