## In re BROWN.

(District Court, W. D. Kentucky. November 18, 1915.)

1. COURTS ⊙347—FEDERAL COURTS—PLEADING—DEMURRERS.

Demurrers in equity cases are abolished by the new equity rules, and moreover are inappropriate to the various steps in bankruptcy proceedings.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⊙347.]

2. BANKRUPTCY ⊙400—EXEMPTIONS—SETTING APART.

The setting apart of exempt property to the bankrupt, and the sale of real estate in which a homestead is claimed, if indivisible, should always be promptly attended to by the trustee, and the referee should see that this is done.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. ⊙400.]

3. BANKRUPTCY ⊙342—ALLOWANCE OF CLAIMS—PETITIONS FOR RECONSIDERATION—WITHDRAWAL.

The claim of a mortgagee was allowed by a referee in bankruptcy as a secured debt, and the trustee filed a petition for a reconsideration and disallowance of such claim. The matter was brought to trial, such testimony as was offered was heard, and after argument the referee announc-

ed his judgment and conclusions, and thereafter entered a decree denying the trustee's petition. Before the decree was entered, but after his announcement of his decision, the trustee moved to dismiss his petition without prejudice. *Held*, that it was within the discretion of the referee at this stage of the proceeding to refuse to permit such dismissal, especially as the trustee desired such dismissal in order that he might litigate with the bankrupt questions concerning the bankrupt's claim of homestead in property covered by the mortgage, a matter with which he had no concern.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 529; Dec. Dig. ☞342.]

4. COURTS ☞335—UNITED STATES COURTS—CONFORMITY TO STATE PRACTICE.
While the state practice governs largely in common-law cases, it does not govern or control in equity cases.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 902–907½; Dec. Dig. ☞335.]

5. BANKRUPTCY ☞400—EXEMPTIONS—SETTING APART.
The bankruptcy court can do nothing more than set apart to the bankrupt property exempted by the state law, and whether any creditor has a superior right in or to the exempt property is a question to be litigated in the state courts, and not in the bankruptcy courts, though a bankrupt's discharge may be delayed for a reasonable time to enable the state court to settle such questions.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. ☞400.]

6. BANKRUPTCY ☞400—EXEMPT PROPERTY—RIGHTS OF TRUSTEE.
A trustee in bankruptcy has nothing to do with exempt property, and, while creditors may litigate in the state courts the question of their superior right in such property, the trustee cannot do so.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. ☞400.]

7. BANKRUPTCY ☞184—RECORDING—NECESSITY AS AGAINST CREDITORS.
Under the Kentucky recording statute, a mortgage executed by a bankrupt, though unrecorded, has priority over creditors who have not in the meantime attached the land.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. ☞184.]

In Bankruptcy. In the matter of James Henry Brown, bankrupt. On trustee's petition for a review of an order of the referee. Petition dismissed, and order approved and affirmed.

J. C. Erwin, of Murray, Ky., and Arthur Y. Martin, of Paducah, Ky., for petitioning creditors.

J. P. Holt, of Murray, Ky., for bankrupt.

EVANS, District Judge. S. O. Miller, a creditor of the bankrupt, filed his proof of debt upon a note dated April 21, 1909, for $425, due April 21, 1910, with interest from date until paid, subject to a credit of $136. Payment of the note was secured by a mortgage executed simultaneously with the note upon certain real estate. The mortgage was not recorded until March 1, 1915, only a short time before the adjudication in bankruptcy on April 20, 1915. The referee allowed the claim as a secured debt.

The trustee filed a petition before the referee, praying that the claim be reconsidered, and that it be "disallowed in so far as it is sought to

have a lien adjudged on said land, or the proceeds thereof, until after the payment of the general indebtedness of said bankrupt, or such debts as were created without notice of the lien herein claimed." Subsequently the trustee filed an amendment to his petition, wherein he prayed "that said claim, if allowed herein, be allowed only as against the interest of the bankrupt in said proceeds, and so as not to prejudice the rights of the general creditors of said estate, and he further prays as in his original petition."

[1] We ignore certain demurrers to these petitions, because by the new equity rules demurrers were abolished in equity cases, and besides we had previously held them inappropriate to the various steps taken in bankruptcy proceedings.

[2] It appears that the real estate embraced in the mortgage to Miller was estimated by him in his schedules to be worth $1,300. He therein claimed a homestead, and showed himself to be a housekeeper with a family, consisting of a wife and several children, and stated that he, with his family, had previously occupied, and did then occupy, the premises as a homestead. The right to have this property to the extent of $1,000 exempt from the payment of his debts inures to the bankrupt under the provision of section 1702 of the Kentucky Statutes. Whether any steps have been' taken by the trustee to set apart the homestead to the bankrupt is not shown by the papers sent up with the petition for a review now under consideration, although one of the first concerns of the trustee should always be promptly to set aside to the bankrupt any exempt property. If the real estate in which the homestead is claimed be indivisible, steps should be taken to have it sold. These things should always be promptly attended to by a trustee, and the referee should see that it is done. Here it appears that the trustee has rather been inclined to litigate with the bankrupt as to his rights in the homestead, and to claim for the trustee and creditors some rights either in the whole homestead or in such parts of it as might remain after the satisfaction of Miller's debt.

[3] The petition of the trustee for a re-examination of the claim of Miller was filed June 2d, and the amendment to it on August 6th. Efforts were made to have the matter disposed of, during which, on June 12th, certain facts were agreed to by stipulation in writing in these terms, to wit:

"It is stipulated as an agreed statement of facts, for the purpose of the trial and determination of the trustee's petition for the reconsideration and rejection of the mortgage claim of S. O. Miller, on the real estate of the bankrupt, in so far as the same is a lien as against the creditors herein: That the said mortgage debt was made in good faith, and for a present valuable consideration, to wit, money loaned, and that the mortgagee failed to record his mortgage until March 1, 1915, by neglect, and did not purposely secrete the same, nor have any agreement with the mortgagor, or other persons, to withhold the same from record, or to defraud the creditors herein, or other persons, by doing so; that the creditors of the bankrupt herein had no knowledge or information of the existence of said mortgage, until after their debts against the bankrupt had been created, and extended credit to the bankrupt without knowledge or information of the said mortgage lien existing against his said real estate. The creditors knew, at the time they extended this credit, the bankrupt owned this real estate, but did not know of the existence of

this mortgage, and extended credit in part because of their knowledge of his ownership of this real estate, and not knowing of the existence of this mortgage."

It is nowhere claimed that any of the bankrupt's debts were created before the purchase of the land or the erection of the improvements thereon (section 1702), nor is it claimed that any creditor had sued out any attachment against the property or caused it to be levied thereon.

At last the matter was brought to trial on October 21st. The referee then heard such testimony as was offered, and, after argument, announced his judgment and conclusions thereon, but said that he would dictate his order and enter it the following day. On October 22d, before the decree was in fact entered by him, the trustee moved to dismiss without prejudice his petition for a re-examination of Miller's claim and its disallowance, the referee overruled the latter motion of the trustee, and entered the decree denying the petition to reconsider and disallow Miller's claim pursuant to the decision announced on the 21st, but which he took time to draw up in form. He embraced in the decree a clause overruling the trustee's motion to dismiss his petition without prejudice.

The trustee then filed this petition to have reviewed by the court so much of the order of the referee entered on October 22, 1915, as refused to allow him to withdraw his petition for a reconsideration and disallowance of Miller's claim, or else to dismiss the same without prejudice. The other portions of the referee's order of the date last named are not complained of or directly sought to be disturbed by the petition for a review. The trustee manifests his purpose to pitch the controversy here upon the question of his right to dismiss his petitions filed June 2d and August 6th without prejudice.

We think it was well within the discretion of the referee, under the facts stated, to refuse, at that stage, to permit the trustee to frustrate the whole purpose of the trial by dismissing his petition, after speculating upon the chances of obtaining the referee's favorable decision upon the case he had brought, and which the referee had already decided against him, although there had been no formal entry of an order upon the decision he had announced. Ordinarily a plaintiff may dismiss his suit, but in cases where it has gone as far as in this instance, and where great injustice might be done, the trial court has a discretion which may be exercised. See the opinion of the Circuit Court of Appeals, delivered by Judge Taft, in City of Detroit v. Detroit City R. R. Co. (C. C.) 55 Fed. 569, 572, and Pullman Car Co. v. Transportation Co., 171 U. S. 138, 146, 18 Sup. Ct. 808, 43 L. Ed. 108.

[4] We think the referee was well within his discretion when, under all the circumstances, he concluded that the attitude and position of this case were such as called for the defeat of the attempt of the trustee to get out of court after the announcement of the decision against him whereby he found that there was no chance to obtain the relief he sought. It will be remembered that the rule in such cases prescribed by the Kentucky Code of Practice, while we believe it does

not vary from what we have stated, cannot be applied, as such, in equity cases in the courts of the United States. The Code of Practice governs us largely in common-law cases, but it does not govern nor control us in equity cases.

[5, 6] It may strengthen our conclusion to recall that the bankrupt court can do nothing more than cause to be set apart to the bankrupt the property which the state law exempts from his debts. Whether any creditor has, under certain conditions, a superior right in or to the exempt property, is a question to be litigated in the state courts, and not in the bankruptcy courts, though the latter is authorized to delay the bankrupt's discharge for a reasonable time to enable the state court to settle such questions. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061. Otherwise the trustee has nothing to do with exempt property, and his attempt to obtain an opportunity in this instance to litigate questions with which he, as trustee, can have no legitimate concern, by dismissing his petition for a reconsideration of Miller's claim presents a situation which might well have influenced the discretion of the referee. Creditors may litigate such matters in the state courts, but the trustee cannot, for the reason that he, as trustee, has no concern with them.

[7] Again, further justification of the referee's exercise of discretion is found in the opinion of the Supreme Court in Holt, Trustee, v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756, which has conclusively established for this court the proposition that Miller's mortgage has priority over any of the bankrupt's creditors, although not recorded, because no one of them, in the meantime, had attached the land. The recording statute of Kentucky was held in that case to be ineffective unless an attachment had been sued out by the creditor claiming its benefits. So that under that case the trustee, who acts only for the general creditors, can have no rights here. Those creditors have no rights in the exempt property which can be enforced here, even in their own names, and the trustee has no rights at all in such property. 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061.

It appears that the bankrupt and his wife joined in the mortgage to Miller, and that they therein waived the benefit of the homestead exemption. But his waiver was solely for the benefit of Miller and for the security of his debt alone. To hold that Miller should be confined to the homestead, so as to give other creditors the right to the entire surplus, would be to hold that the bankrupt and his wife waived the homestead exemption for the benefit of all the creditors, instead of for Miller alone. The statute (section 1706) hardly permits a construction so latitudinous, but in the absence of controlling interpretation to the contrary by the Court of Appeals it might most plausibly be held that, in order that any particular creditor may have the benefit of a waiver of the homestead exemption, there must be a direct waiver in favor of his particular debt.

A waiver of homestead rights in favor of all creditors cannot be worked out through a waiver made to one creditor only, nor can the latter form of waiver entitle all creditors to a right to marshal securi-

ties or funds. These propositions are not now decided, but a statement of them shows how very suggestive they become, in view of the general and well-settled rule that exemption statutes should be liberally construed in favor of the exemptions given.

Without pursuing the subject further, we conclude that the referee did not abuse his discretion. The petition for a review of his order should be dismissed, and the order sought to be reviewed should be, and it is, approved and affirmed.