J. E. BRACEWELL et al., Appellants, v. KATIE HUGHES, Appellee.

No. 40464.

242

FEBRUARY 10, 1931.

OPINION ON REHEARING APRIL 5, 1932.

T. W. Miles, for appellee.

Bracewell, Murrow & Poston, for appellants.

ALBERT, J.—A rehearing was granted in this case, the former opinion being found in 235 N. W. 37, which opinion is hereby withdrawn.

 The Farmers National Bank was the owner and holder of a note executed by the defendant, Kate Hughes, dated Nov. 7, 1925. The bank went into liquidation, and this note, with others, was turned over to the plaintiffs as trustees, and as such trustees, on May 10, 1929, they filed their petition in this cause, suing on said note; and in pursuance of the prayer of said petition, attachment was issued and levy made on Lots 1, 2, and 3, in Block 1, Cook's Second Addition to Clio, Iowa.

On April 29th, prior to the bringing of this suit, Kate Hughes was adjudged a bankrupt in United States Federal Court. On June 28, 1929, plaintiffs amended their petition and moved to transfer the cause to equity, and in this amendment they set out that Kate Hughes was adjudged a bankrupt as aforesaid; that a trustee had been appointed, and said trustee filed a report setting off to Kate Hughes, the defendant, as her homestead, the above described lots, which report was approved by the bankruptcy court; that Kate Hughes acquired title thereto through the will of her mother in 1922; that she at no time lived on these lots until 1929, and acquired no residence or homestead rights therein. The prayer was that the plaintiffs have a decree for the amount due by reason of the debts created

prior to the acquisition of the homestead, to be established as a lien against said lots, and that the same be sold on execution.

Later, plaintiffs again amended the petition, setting out that the note sued on was a renewal of many previous notes, the principal part of which was for money borrowed from the bank in the year 1922, and again asking that the amount found to be due be established as a lien against said lots.

Much time was devoted to evidence, pro and con, on the question of whether or not this property was the homestead of Kate Hughes at the time it was set over by the trustees in bankruptcy. This question, as we understand it, was not before the court for determination. When the trustees filed their report in the bankruptcy proceedings, setting off this property to Kate Hughes as a homestead, these parties had a right to appear thereto and object to such report, and having failed so to do, it is a final adjudication, by which they are bound for all time. See official form as prescribed by the United States Supreme Court, Collier on Bankruptcy (13th Ed.), Vol. 1, p. 334; also Vol. 3, p. 2410, Form 231.

General Order 17 (11 U. S. C. A., Sec. 53) defines the duty of the trustee, and among other things provides:

"The trustee shall make report to the court, within twenty days after receiving notice of his appointment, of the articles set off to the bankrupt by him, according to the provisions of the forty-seventh section of the act, * * * *and any creditor may take* exceptions to the determination of the trustee within twenty days after the filing of the report."

See also McGahan v. Anderson, 113 Fed. 115.

That a setting off of this property as exempt by the Federal Bankruptcy Act is a final adjudication against all the world, see Lockwood v. Exchange Nat. Bank, 47 L. Ed. (U. S.) 1061; McGahan v. Anderson, 113 Fed. 115; In re Bordelon, 4 Fed. (2d Series) 285; In re Brown, 228 Fed. 533; Duffy v. Tegeler, 19 Fed. (2d Series) 305.

It must be held, therefore, as against said trustee in bankruptcy and the creditors whom he represented on the date of the approval of the trustee's report setting off this property to Kate Hughes as a homestead, and therefore exempt, it was finally settled as against all parties, including the plaintiffs herein, that

on that date, to wit, April, 1929, the property was the homestead of Kate Hughes.

When exempt property is thus set off by the Federal Court, the rights or claims of creditors therein must be adjudicated and determined in the state courts under the state law, limited or superseded by the bankruptcy act and its effects. Eckhardt v. Hess, 200 Iowa 1308; Schwanz v. Farmers Co-operative Co., 204 Iowa 1273. That the Federal Court recognizes equitable liens under certain circumstances see Johnson v. Root Mfg. Co., 60 L. Ed. (U. S.) 934; Mott v. Wissler Min. Co., 135 Fed. 697; Moore v. Green, 145 Fed. 472.

The evidence in the case abundantly shows that the indebtedness represented by the renewal note was created long prior to that date. The evidence equally shows that Kate Hughes never acquired a homestead right in said property prior to the time it was set off to her in bankruptcy court. She did not acquire a homestead right in said property from her parents, because the same passed to her by will in a different share from what she would have taken under the law of descent. Rice v. Burkhart, 130 Iowa 520; Voris v. West, 180 Iowa 138; Arispe Bank v. Werner, 201 Iowa 484.

It follows, therefore, that Kate Hughes had no homestead right in said property prior to April, 1929, when the same was set off to her in the Federal Court as exempt property, being a homestead. From thence on, under the adjudication of the Federal Court, she had a homestead right in this property.

Plaintiffs say, however, that, even if this be true, she had no homestead right as against them, because the debt owing to them by her long antedated her acquisition of this homestead, and they call to their aid in this respect Section 10155, Code, 1927, which reads in part as follows:

"The homestead may be sold to satisfy debts of each of the following classes: 1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution."

They say, therefore, that they would be entitled to issue an execution, levy on the property and sell it, even though it be the homestead of Kate Hughes, because their debt anteceded the acquisition of this homestead.

The summary of the contention of the appellants, stated in another way, is that they are seeking to have a judgment against Kate Hughes on this note, and after they have obtained said judgment, they will then be in a position to avail themselves of this section of the statute, by issuing execution and selling the property.

At this point in the case the troublesome questions arise. To take the plaintiffs at their word, after alleging the facts, they ask that they have judgment for the amount of their claim, and that the court establish the same as a lien on this property. To obtain such judgment and lien on the property, however, the foundation for the same is the promissory note on which they sue. Just what is the status of the plaintiffs on this promissory note in the light of the adjudication in bankruptcy?

It is fundamental that an adjudication in bankruptcy bars all proceedings in the state courts on unsecured claims, except as allowed in bankruptcy law. It is equally well settled that the adjudication in bankruptcy does not bar, or in any way interfere with, the proceedings in state courts to enforce liens (more than four months old) held by creditors against the property of the bankrupt. Lockwood v. Exchange Nat. Bank, 47 L. Ed. (U. S.) 1061; In re Boyd, 120 Fed. 999; In re Rabb, 21 Fed. (2d Ser.) 254; In re Cheatham, 210 Fed. 370; In re Vadner, 259 Fed. 614; In re McBryde, 99 Fed. 686; Duffy v. Tegeler, 19 Fed. (2d Series) 305; In re Maaget, 173 Fed. 232; Ingram v. Wilson, 125 Fed. 913; Phillips v. Krakower, 46 Fed. (2d Ser.) 764; Brown v. Four-in-One Coal Co., 286 Fed. 512; In re Tiffany, 147 Fed. 314.

Of course, if the plaintiffs had sued the defendant on this note and obtained a proper judgment more than four months before the adjudication in bankruptcy, their judgment, under the statute, would be a lien; but they did not do so, and now bring this action after such adjudication in bankruptcy. The pleading of plaintiffs presupposes that they have no lien. They in fact had no lien on the property at the time of the bankruptcy proceedings, and they are now asking the court in this proceeding not to enforce a lien which existed at the time of the bankruptcy, but to establish or create a lien.

Passing the question as to whether or not, under certain circumstances, this could be done in a state court, we are sat-

isfied that it cannot be done in this case. The plaintiffs insist that it can, because they say they have a right to subject this property to the payment of their debt because the debt antedates the homestead. As a practical question, as against their claim there is, in fact, no outstanding homestead right. This is true because the general statute freeing homesteads from judicial process excepts from its operation the very situation we have before us in this case. The plaintiffs therefore have an unsecured claim against the defendant, and the defendant is not in a position to avail herself of this exemption statute as against the proper assertion of said claim. The right, therefore, of the plaintiffs to sue on this claim (without considering the bankruptcy law), take judgment thereon, and issue execution for the sale of said property, is a right which every person has on an unsecured claim against property of any debtor. This right to so subject the property is not a lien, nor is it in the nature of a lien. True, it may be ripened into a lien by suit on the note and judgment in which there is a finding setting out the date and the origin of the debt. If such judgment were entered and the date of the debt antedated the acquisition of the homestead, then, under Section 11602, Code, 1927, such judgment would become a lien on the property. But to accomplish this end, the basis of plaintiffs' action is the promissory note in controversy. Could the plaintiffs therefore sue on said promissory note and put it into judgment after the adjudication in bankruptcy? Plaintiffs stand in the position of holding this unsecured note of the defendant's, and the adjudication in bankruptcy bars any procedure therein in the state courts except, under the circumstances heretofore explained, they may put the same to judgment, but they can have no execution thereon.

In 11 U. S. C. A., Section 103 of the Bankruptcy Act, provision is made that the debts of the bankrupt, founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgments, may be proved and allowed against his estate. Also, unliquidated claims against the bankrupt may be, pursuant to application of the court, liquidated in such manner as it shall direct, and may, therefore, be proved and allowed against the

estate. These provisions have been interpreted and frequently applied. In re McBryde, 99 Fed. 686; In re James Dunlap Carpet Co., 163 Fed. 541; Moch v. Bank, 107 Fed. 897; Uden v. Construction Co., 1 Fed. (2d Ed.) 743; Berry Clothing Co. v. Shopnick, 144 N. E. (Mass.) 392.

These cases recognize, under a construction of the aforesaid section of the Bankruptcy Law, that this does not create a new claim, but changes the form of the claim from that of an unsecured note to a judgment which is provable in bankruptcy, thus settling the question as to the validity of the note, amount due, etc.

In Ingram v. Wilson, 125 Fed. 913, the Circuit Court of the 8th Circuit held that whatever relief the creditor was entitled to against a bankrupt, which was the homestead, under the laws of Iowa must be sought and obtained in that jurisdiction. The right to a personal judgment is not discussed.

In Roden Grocery v. Bacon, 133 Fed. 515, the matter involved was an instrument containing a waiver. The court said:

"Whether the bankrupt could avoid or defeat such contracts was for the state courts to decide, and the issue seems to us to be wholly immaterial in the bankruptcy court."

That opinion contains a paragraph in which the court says that the creditor did not have a lien on the property (the homestead).

In In re Maaget, 173 Fed. 232, the Federal District Court for the Southern District of New York held that a bankruptcy court may properly permit an attachment creditor, where the bankrupt has given a bond, to prosecute his action to judgment against the bankrupt for the purpose of perfecting his right of action against the surety, but no execution shall issue.

In the case of Simon Casady & Company v. Hartzell, 171 Iowa 325, this court held, under the same circumstances, that no recovery could be had on such a bond.

The Circuit Court of Appeals in Chase v. Farmers & Merchants Nat. Bank, 202 Fed. 904, said:

"We find nothing in the act to prevent a creditor from bringing his action upon a provable claim, even after adjudication. * * * Enforcement of the judgment in such a suit presents a different question, but with that we are not now concerned."

In In re Buchanan, 219 Fed. 492, the creditors had, prior to the bankruptcy, commenced suit in the New York state court to reach that portion of the income of certain trust funds which was in excess of what was necessary for the bankrupt's support. It was held that the action might be prosecuted to judgment, but prosecution of the suit beyond judgment could not be permitted.

In Brown v. Four-in-One Coal Co., 286 Fed. 512, it was held that the suit might be prosecuted to judgment in the state court, but "of course (he), can have no execution issued against the bankrupt upon any judgment he may recover therein."

In In re Rabb, 21 Fed. (2d Series) 254, it was held that liens against the homestead of a bankrupt must be enforced in the state court.

Phillips v. Krakower, 46 Fed. (2d Ser.) 764, does not involve exempt property, but property owned in the entirety by the husband and wife. The case turned on the peculiar conditions and qualifications of an estate in entirety.

It will be seen from the above review of the cases that the uniform holding is that while a suit may be prosecuted to judgment in the district courts of the state, no execution may be issued thereon, and practically the only thing accomplished by such judgment is that it may be filed as a provable claim in bankruptcy with the issues settled as to its validity and the amount thereof.

We have no case cited to us, nor have we been able to find any from any court holding, under such circumstances, that suit may be maintained successfully in a state court to create a lien as distinguished from a suit to enforce an existing lien.

So far, we have yet to find a holding that a suit may be brought in equity on a promissory note without an accompanying lien, legal or equitable, and carried to a judgment *in rem*. Such contention, of course, has its novelty, but we are unable to find any authority or basis for warranting such an action.

The Federal Court, by its order staying discharge until this matter be determined in the state courts, could not and did not, by such order, create a remedy in equity for the appellants, and whatever rights they have must be used by them in the state court, where their sole and only remedy, under this set of facts, is a law and not an equity action.

Of course, what has here been said with reference to liens must not be understood as applying to cases where the exemption is waived or the lien created on the exempt property by contract.

Further discussion of the question is not necessary, because the fundamentals underlying this case are fully settled and adjudicated in McMains v. Cunningham, 214 Iowa 300. It follows that the decree and judgment of the court below must be and they are affirmed.

WAGNER, C. J., and KINDIG, STEVENS, EVANS, and FAVILLE, JJ., concur.

MORLING, GRIMM, and DE GRAFF, JJ., dissent.

MORLING, J., (dissenting)—It must be found on this record that immediately prior to April 10, 1929, the Farmers National Bank, or the plaintiffs as its trustees, had a cause of action against the defendant on promissory notes upon which plaintiffs could then have maintained this action; that no discharge in bankruptcy has been granted and there is no defense to the action. On the date mentioned defendant was by the Federal court adjudged to be a bankrupt. By such adjudication all the defendant's non-exempt property passed into the jurisdiction of the court of bankruptcy and vested in the trustee. 7 C. J. 113. Title to the bankrupt's non-exempt property however did not vest in the trustee or come under the jurisdiction of the court in bankruptcy further than to the extent required to enable it to be set apart to defendant as exempt. 7 C. J. 362. On the admissions in the pleadings it must be found that the court in bankruptcy did shortly after April 10, 1929, adjudicate the property here in controversy to be the defendant's homestead and set it off to her. That adjudication was, as to her creditors, conclusive that on that date the property in question was defendant's homestead. On this record, however, it must be further found that the property was not homestead prior to that date. That is, defendant's homestead right exists solely by virtue of, and dates from, the adjudication of the court of bankruptcy, which, so far as we are now concerned, operates to exclude it from the jurisdiction of the Federal court, and to subject it to the jurisdiction of the state courts in a proper action involving it. It must be further found upon this record that the indebted-

ness to the plaintiffs, here sued upon, was contracted long prior to the acquisition of the homestead. A mere adjudication in bankruptcy does not bar proceedings in the state court. The adjudication of defendant's bankruptcy in no wise prevented the plaintiffs from commencing action to recover upon her indebtedness to the plaintiffs, or if not restrained by the court in bankruptcy from prosecuting it to judgment. 7 C. J. 349; Bankruptcy Act (30 Statutes at Large 562), Section 63; Woods v. Berry, (Cal.) 296 Pac. 332, 335; Tune v. Vaughan, (Ark.) 281 S. W. 906.

The jurisdiction of the state court is entirely separate and independent of that of the Federal court. The Federal court might however under the bankruptcy law, in a proper case, stay the prosecution of the action in the state court. Application for such a stay however would be "addressed to the wise discretion of the district judge." Likewise an application for vacating the stay might be made and this too would be addressed to the discretion of the judge. In re Rosenstein, 276 Fed. 704; In re Gerstenzang, 52 Fed. (2d.) 863; In re Kane, 48 Fed. (2d.) 96.

That the bankrupt estate would have an interest in the property and reason for the application for stay would have to appear. Bushong v. Theard, 37 Fed. (2d.) 690, certiorari denied, 281 U. S. 763.

The stay if granted would not effect a dismissal of the action in the state court or defeat the cause of action. It would merely suspend proceedings in the state court so long as it is in force. New River Coal Land Co. v. Ruffner, 165 Fed. 881, 886.

The plaintiffs' right to a general judgment would be barred only in the event that a discharge in bankruptcy should be granted and the plaintiffs' claim should be dischargeable (which does not appear) and defendant should plead and prove it in the state court. Drees v. Armstrong, 180 Iowa 29; 7 C. J. 414.

After the property was adjudged to be defendant's homestead and set off to her the court in bankruptcy had no further jurisdiction with respect to it or to determine rights in it. All actions to establish or enforce rights in or liabilities against that property would have to be brought in and determined by the state court. Lockwood v. Exchange Nat. Bank, 47 L. Ed. 1061;

Drees v. Armstrong, 180 Iowa 29; Johnson v. Turnholt, 199 Iowa 1331, and cases post.

Under the provisions of the bankruptcy law the adjudication in bankruptcy dissolved all liens created by or obtained in or pursuant to any suit or proceeding at law or in equity within four months before the filing of the petition in bankruptcy. Bankruptcy Law (30 Statutes at Large 564), Section 67.

It is said in C. B. & Q. R. Co. v. Hall, 229 U. S. 511, 516;

"The section (67F) does not, however, defeat rights in the exempt property acquired by contract or by waiver of the exemption. These may be enforced or foreclosed by judgments obtained even after the petition in bankruptcy was filed, under the principle declared in Lockwood v. Exchange Bank, 190 U. S. 294."

No such lien existed in this case. By the statute of this state, which the bankruptcy law does not purport to affect, Code Section 10155, "The homestead may be sold to satisfy debts * * * contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor liable to execution." Prior to the filing of petition in bankruptcy the plaintiffs, under the law of the state, had the unqualified right to sue the defendant to recover judgment and to have the homestead in controversy sold to satisfy it, provided there was no other property liable to execution, as to which matter no question has been raised here. The statute does not provide specifically how, or by what proceedings, "the homestead may be sold." The method must, therefore, be through action, judgment and final process for judicial sale. Prior to the filing of the petition in bankruptcy therefore the plaintiffs had the right to bring action for the recovery of judgment, issuance of execution and sale of property. There is no provision of the state law by which this right and remedy may be suspended, barred or defeated by an adjudication in bankruptcy or by any action of any other jurisdiction. The plaintiffs' right of action and to have the homestead sold is exclusively under the state law. The jurisdiction of the state courts is exclusive. The court in bankruptcy or any other Federal court or any Federal law has nothing whatever to do with the case.

The bankruptcy court is in no wise concerned because no assets within its jurisdiction, or which it may administer, will be affected by any action taken in the state court to subject the property to the claim of the plaintiffs further than that if plaintiffs are successful the amount of the bankrupt's indebtedness to them would be reduced and the other creditors to that extent would if there were other assets be benefited rather than prejudiced. The bankruptcy court has not stayed proceedings in the state court and on this record there would be no occasion in any event for it to exercise its discretionary power to grant a stay.

It is the duty of the courts of the state to administer and enforce its laws and the rights of all persons under them. The plaintiffs brought action at law, took out a writ of attachment and levied it upon the property in controversy. This was done, however, after the expiration of the four months and after the bankruptcy court had renounced and terminated all jurisdiction over it. The lien of the attachment, therefore, was not one which was dissolved by the provisions of the bankruptcy act. However, the plaintiffs have amended and are now prosecuting their action in the form of a creditor's bill. The defendant is indebted to the plaintiffs. The defendant contends that plaintiffs are not entitled to a personal judgment against her. As the case stands at the present time plaintiffs are entitled to that judgment because no discharge has been granted, and no interference with the process of the Federal court which comity should respect will result.

We may say at this point that under the Federal law the bankruptcy court observed proper practice by entering an order withholding the discharge of the defendant pending the determination of the rights of all parties in the state court. Brown v. Four-in-One Coal Co., 286 Fed. 512.

In Phillips v. Krakower, 46 Fed. (2d.) 764, 765, (C. C. A.) it is said:

"The question presented is whether, without giving these creditors an opportunity to proceed, the court should grant the discharge knowing that it will result in a legal fraud, i.e. the effectual withdrawing of the property from the reach of those entitled to subject it to their claims, for the beneficial ownership and possession of those who created the claims against it.

We cannot conceive that any court would lend its aid to the accomplishment of a result so shocking to the conscience.

"The purpose of the bankruptcy act was to equitably distribute the assets of distressed debtors among their creditors and to discharge them from further liability after this had been done. It was never contemplated that it should be used to perpetuate fraud or to shield assets from creditors. It is elementary that a bankrupt is not entitled to a discharge unless and until he has honestly surrendered his assets for the benefit of creditors; and he certainly is not in position to ask a court of bankruptcy, which is a court of equity, to grant him a discharge under the statute, when the effect of the discharge will be to withdraw from the reach of creditors property properly applicable to the satisfaction of their claims. * * * There is ample authority for the proposition that where property is not reachable through bankruptcy, but can be reached by a creditor under state laws, the court of bankruptcy should delay granting a discharge to the bankrupt to enable the creditor to proceed thereunder in the state courts. Lockwood v. Exchange Bank, 190 U. S. 294, 23 S. Ct. 751, 754, 47 L. Ed. 1061; Duffy v. Tegeler (C. C. A. 8th) 19 F. (2d.) 305; In re Watson (D. C.) 201 F. 962; B. F. Roden Grocery Co. v. Bacon (C. C. A. 5th) 133 F. 515. Ingram v. Wilson (C. C. A. 8th) 125 F. 913; In re Wells (D. C.) 105 F. 762.

"In Lockwood v. Exchange Bank, supra, the facts were that a bankrupt had executed a note waiving his homestead exemption in favor of the payee. The Supreme Court held that the property covered by the exemption remained in the bankrupt and did not pass to the trustee to be administered in the bankruptcy proceedings. It was property, therefore, which was reachable by the creditor in the state courts, but, as here, the right of the creditor to subject it to his claim would be lost if the bankrupt were granted a discharge and his debt thereby extinguished. In this situation, it was held that the court of bankruptcy should defer the granting of the discharge for a reasonable length of time to allow the creditor opportunity to subject the property to the satisfaction of his claim. The court, speaking through Mr. Justice White, said:

" 'The rights of creditors having no lien, as in the case at bar, but having a remedy under the state law against the exempt

property, may be protected by the court of bankruptcy, since, certainly, there would exist in favor of a creditor holding a waiver note, like that possessed by the petitioning creditor in the case at bar, an equity entitling him to a reasonable postponement of the discharge of the bankrupt, in order to allow the institution in the state court of such proceedings as might be necessary to make effective the rights possessed by the creditor.'

"There is no difference in principle between that case and the case at bar. In both there was property which did not pass to the trustee, but was reachable by the creditor under the laws of the state. In both a discharge of the bankrupt would have precluded a proceeding to subject the property to the satisfaction of the debt. And in both a stay of the discharge was asked in order that the property might be subjected to the claims of the creditor. Counsel for Phillips attempt to draw a distinction in that the bankrupt in the Lockwood case had signed a waiver expressly consenting that the homestead property be subjected to the debt; but in the case at bar bankrupt, by signing the note with his wife, gave his consent to the subjection of the property held by entireties to its satisfaction. The basis upon which relief is granted in either case, however, is, not that the bankrupt has consented that property be subjected to the claim of the creditor, but that an equity exists in favor of the creditor because he is entitled to subject property to the satisfaction of his claim and this right will be extinguished by the granting of the discharge."

That case was one to subject the interest of the bankrupt in an estate by entireties which did not pass to the trustee. The principle there announced is general and fully applicable here. Drees v. Armstrong, 180 Iowa 29.

The bankruptcy proceedings may ultimately result in defendant's discharge from her dischargeable debts. Whether any or all of the indebtedness to the plaintiffs is dischargeable does not appear. It has been held that notwithstanding a discharge in bankruptcy the state court is the proper forum to determine whether the debt there sued upon, to which the discharge is pleaded in bar, was one thereby discharged. Wheeler & Motter Merc. Co. v. Green, (Okla.) 222 Pac. 965.

Whether this is correct or not does not now call for dis-

cussion. The plaintiffs have seen fit to amend and to seek relief in equity by way of creditor's bill. The plaintiffs have the right to have this property sold for the payment of defendant's indebtedness to them. If they are not entitled to a writ of attachment, or to personal judgment and general execution as defendant claims, then there is no remedy at law. It is a maxim of equity that equity will not suffer a wrong to be without a remedy. Pomeroy (Vol. 1, 3d Ed., Sec. 423) says that:

"This principle, which is the somewhat restricted application to the equity jurisprudence of the more comprehensive legal maxim, *Ubi jus ibi remedium*,—wherever a legal right has been infringed, a remedy will be given,—is the source of the entire equitable jurisdiction, exclusive, concurrent, and auxiliary. * * * Section 424. * * * In order that the principle may apply, one of three facts must exist, viz., either,—1. The right itself must be one not recognized as existing by the law; or 2. The right existing at the law, the remedy must be one which the law cannot or does not administer at all; or 3. The right existing at the law, and the remedy being one which the law gives, the remedy *as administered by the law* must be inadequate, incomplete, or uncertain. Of these three alternatives, the first and second denote the exclusive jurisdiction of equity; the third, the concurrent jurisdiction. The third limitation upon the principle is, that it does not apply where a party, whose case would otherwise come within one of the three alternatives above mentioned, has destroyed or lost or waived his right to an equitable remedy by his own act or laches. With these limitations upon its operation, the principle has been developed into the vast range of the equitable jurisdiction, which, considered in its entirety, gives,—1. Legal remedies for the violation of legal rights in a more certain, complete, and adequate manner than the law can give; 2. Equitable remedies for the violation of legal rights, which the law has no power to give with its means of procedure; and 3. Remedies, either equitable or legal in their nature or form, for the violation of rights of which the law takes no cognizance,—rights under which the law does not recognize as existing, and which it either cannot or does not protect and maintain."

Creditor's bills are *quasi in rem*. A judgment is not in-

dispensable where it is impossible or impractical. 15 C. J. 1390.

In Taylor v. Branscombe, 74 Iowa 534, 536, it is said:

"It has been held that a creditor's bill may be maintained, without judgment or attachment, in case the debtor is a non-resident, as were defendants in this case," (citing cases.)

In that case an attachment had been issued but no judgment recovered.

In 21 C. J. 198, it is said:

"In accordance with the maxim, where a statute creates a new right which cannot be adequately enforced at law, equity will contrive remedies and orders to enforce it, unless the statutory remedy is exclusive as determined by the usual rules. * * * The fact that there has been no precedent will not deter a court of equity from awarding relief in a proper case."

In the Note are quotations:

" 'The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind, and the great principles of natural justice, which are recognized by the courts as a part of the law of the land, and which are applicable alike to all conditions of society, all ages, and all people. * * * Where it is clear the circumstances of the case in hand require an application of those principles, the fact that no precedent can be found in which relief has been granted under a similar state of facts is no reason for refusing it.' "

" 'Every just order or rule known to equity courts was born of some emergency, to meet some new conditions, and was, therefore, in its time, without a precedent. If based on sound principles, and beneficent results follow their enforcement, affording necessary relief to the one party without imposing illegal burdens on the other, new remedies and unprecedented orders are not unwelcome aids to the chancellor to meet the constantly varying demands for equitable relief.' "

" 'Though no precedent may be at hand in a given situation, since principles of equity are so broad that the wrong involved need not go without remedy, its doors will swing open for the

asking, and a new precedent be made, an old principle again being illustrated.' ''

If a discharge were granted and the debt to plaintiffs were dischargeable in bankruptcy the legal relationship of debtor and creditor between plaintiffs and defendant would thereby terminate and plaintiffs would be without remedy. Drees v. Armstrong, 180 Iowa 29; Tune v. Vaughan, (Ark.) 281 S. W. 906.

It is said in Groves v. Osburn, (Or.) 79 Pac. 500:

"Where there is a lien, as in the case of a mortgage, it may be enforced, although the debt is barred by the statute of limitations; but where there is no lien, and the debt is barred, a remedy that was alone at law is entirely lost. So it must be in the present case, the debtor having been discharged by the bankruptcy proceeding before the plaintiff attempted to enforce her demands, her remedy is entirely swept away, unless the bankrupt has waived the discharge. If prior to the bankrupt's discharge plaintiff had taken proper action with a view to subjecting this property to the payment of her demands, there is little question that the federal court would have withheld the discharge until ample opportunity would have been afforded for the accomplishment of the purpose, and the remedy at law would perhaps have been adequate. * * * But having waited until the debts were themselves discharged, she is now remediless in either forum."

But the plaintiffs are entitled to at least a special or limited judgment by which the court will adjudicate and declare the amount of defendant's indebtedness to plaintiffs, establish it as a special lien upon the land and direct the issuance of special execution and sale of the land thereunder. In its discretion the court may grant a perpetual stay of general execution if the defendant should be granted a discharge in bankruptcy.

In Hill v. Harding, 130 U. S. 699, 703, it is said:

"When the attachment remains in force, the creditors, notwithstanding the discharge, may have judgment against the bankrupt, to be levied only upon the property attached. Peck v. Jenness, 7 How. 612, 623; Doe v. Childress, 21 Wall. 642. When the attachment has been dissolved, in accordance with the statutes of the State, by the defendant's entering into a

bond or recognizance, with sureties, conditioned to pay to the plaintiffs, * * * the amount of that judgment, the question whether the state court is powerless to render even a formal judgment against him for the single purpose of charging such sureties, or, in the phrase of Chief Justice Waite in Wolf v. Stix, 99 U. S. 1, 9, whether 'the judgment is defeated by the bankruptcy of the person for whom the obligation is assumed' depends not upon any provision of the Bankrupt Act, but upon the extent of the authority of the state court under the local law. Whether that authority is exercised under the settled practice of the court, as in Illinois, or only by virtue of an express statute, as in Massachusetts, there is nothing in the Bankrupt Act to prevent the rendering of such a judgment. The bond or recognizance takes the place of the attachment as a security for the debt of the attaching creditors; they cannot dispute the election, given to the debtor by statute, of substituting the new security for the old one; and the giving of the bond or recognizance, by dissolving the attachment, increases the estate to be distributed in bankruptcy. The judgment is not against the person or property of the bankrupt, and has no other effect than to enable the plaintiff to charge the sureties, in accordance with the express terms of their contract, and with the spirit of that provision of the Bankrupt Act which declares * * * If the bond was executed before the commencement of proceedings in bankruptcy, the discharge of the bankrupt protects him from liability to the obligees, so that, in an action on the bond against him and his sureties, any judgment recovered by the plaintiffs must be accompanied with a perpetual stay of execution against him; but his discharge does not prevent that judgment from being rendered generally against them. * * *''

Following that case the power of the state court to render a limited judgment, adaptable to the circumstances of the case and protecting the bankrupt against general execution or liability after discharge, has often been announced. United States W. E. & P. Co. v. North Penn Iron Co., (Pa.) 75 Atl. 1094; Clauss v. Ainey, (Pa.) 124 Atl. 183; Butterick Pub. Co. v. E. F. Bowen Co., (R. I.) 80 Atl. 277; Brown & Brown Coal Co. v. Antezak, (Mich.) 128 N. W. 774; 130 N. W. 305; Laure v. Singer, (N. J.) 125 Atl. 243; Brown v. Four-in-One Co., 286

Fed. 512; Goodwin & Sigel v. Boston Clothing Co., (R. I.) 129 Atl. 611; In re Rosenstein, 276 Fed. 704.

As plaintiffs are here by attachment and by creditor's bill the matter of practice need not be further considered.

Referring further to specific applications of these principles to similar cases. In Bell v. Dawson Grocery Co., (Ga.) 48 S. E. 150, the bankrupt had given a note waiving homestead and exemptions. It was held:

"(1) The court of bankruptcy has no control over the exemption after it has been set apart, or power to determine the rights of creditors asserting waivers against it. (2) The court of bankruptcy, upon proper application, will withhold A's discharge until B has time to resort to such remedies as may be granted by the state courts. (3) Inasmuch as, on account of the adjudication in bankruptcy B cannot sue A at common law and obtain a judgment against him, and inasmuch as A is estopped by his waiver to claim an exemption as against B, the latter's remedy is in a court of equity, which court is authorized, under the laws of this state, to give B a judgment in rem against the exempted property, subjecting it to his claim, and, where such property is personalty of a perishable nature, or such as will be destroyed in the use, to appoint a receiver to take charge of such property until the judgment in rem has been obtained."

In Hudson v. Lamar, Taylor & Riley Drug Co., 49 S. E. (Ga.) 735, it is held, following that case, that the remedy was in equity, not at law.

In Northern Shoe Co. v. Cecka, 135 N. W. 177, 22 N. D. 631, plaintiff sued for the price of shoes bought by defendant and attached the goods. Defendant filed petition in bankruptcy. The claim was allowed. Plaintiff released its attachment. A part of the goods which had been attached were set off to defendant as exempt. No objection was made by plaintiff or others. Plaintiff afterwards commenced a second action in the state court to recover the same debt and caused a second attachment to be issued, which was levied upon the same goods seized under the first writ. Plaintiff's right to maintain the action was sustained on the authority of Powers Dry Goods Co. v. Nelson, 10 N. D. 580, 88 N. W. 703, 58 L. R. A. 770.

In Powers Dry Goods Co. v. Nelson, 88 N. W. (N. D.) 703,

defendant filed petition in bankruptcy June 23. Plaintiff commenced his suit in the state court June 27 and levied upon the goods sold by it to defendant. On July 2nd defendant was adjudged a bankrupt. On August 6th the bankruptcy court required the trustee to set aside to defendant as exempt the attached property, which was done. Afterward plaintiff caused another attachment to be issued and levied on the same property. Afterward defendant was discharged in bankruptcy. It was held that the title to the exempt property remained in the bankrupt subject to the jurisdiction of the state court; that the lien of the attachment on the exempt property was not discharged. The court cites many cases, among them Bank of Commerce v. Elliott, (Wis.) 85 N. W. 417, which was an action to recover on a note. Defendant pleaded discharge. Plaintiff garnished wages. One of the garnishments was within 4 months of adjudication in bankruptcy. Defendant was discharged in the bankruptcy. The court said:

"Coming now to the question of whether a liberal construction of the word 'lien,' as it is used in the bankrupt act, can reasonably extend it to include a special interest of so shadowy a character that it does not attach to any particular thing, as does such an equitable interest as a mortgage, but only enables the court to act upon the party holding the res, we must look at the matter in the light of the commonly accepted character of the right of a plaintiff in garnishee proceedings and the name such right has commonly borne.

"The courts have uniformly said, as before indicated, that the service of a garnishee process is an equitable levy upon the property of the debtor in the hands of the garnishee and that the interest thereby obtained in such property is at least in the nature of an equitable lien, and has been commonly called a lien. * * * So the plaintiff in a garnishee case, as it seems, does acquire a special interest, even in a mere indebtedness of the garnishee to the defendant, denominated a lien, regardless of the diversity of opinion as to its real character," etc.

The discharge was held not to affect the garnishment.

Gregory v. Cale, 133 N. W. 75 (Minn. and L. R. A.), was an action to recover on a note and to subject homestead. Defendant within a few days after the commencement of the action was ad-

judged a bankrupt and was later discharged, plaintiff having in the meantime obtained a judgment. The court said:

"Whether the judgment was annulled by the discharge in bankruptcy depends entirely upon the question whether it became, when docketed, a valid lien upon that part of the homestead assigned in the bankruptcy proceedings which was subject to the payment of this particular debt. If it so became a valid lien, the discharge in bankruptcy extinguished it only so far as concerned defendant's personal liability. The right to enforce the judgment against the specific property, not a part of the bankrupt estate, was not thereby extinguished or discharged. * * * Whether the judgment became a lien upon the non-exempt land must be determined from our statutes upon the subject, and without reference to the bankruptcy proceedings in the federal court. Plaintiff brought its action in the state court, as it had the right to do. It was an ordinary action at law for the recovery of money, and though it might have been stayed by proper application pending the bankruptcy proceedings, and plaintiff thus put to an equitable action to reach the nonexempt land, no stay was applied for, and the action proceeded to judgment. It did not, of course, operate upon or become a lien upon any of the property of defendant which passed upon the adjudication in bankruptcy to the bankrupt estate; nor did it create a personal liability against defendant, continuing after his discharge. But that it became a valid lien upon that part of the defendant's land which did not pass to the bankrupt estate because a part of the homestead under the then existing statutes, that part of the present homestead which was subject to the payment of the debt when created, seems to us quite clear."

In B. F. Roden Grocery Co. v. Bacon, 133 Fed. 515, C. C. A., after the bankrupt filed his petition in bankruptcy and was adjudged a bankrupt, Roden issued an attachment from the Court of Alabama alleging waiver of exemption and levied it upon property claimed as exempt. The bankrupt set up that the attachment was issued subsequently to the adjudication and before the exemption had been set aside. The court said:

"While the creditor holding a waiver note given by a bankrupt has no lien on specified property—in fact, no lien at all—and the debt represented by such note is one within the purview

of the bankrupt law, to be discharged by proper proceedings thereunder, yet the rights of said creditor are to be so far recognized as to require the withholding of the bankrupt's discharge a reasonable time to permit the creditor to assert in the proper state tribunal his alleged right to subject the exempt property to the satisfaction of his claim. * * * This being the case, it would seem that it is to the interest of the general creditors that such right should be prosecuted and enforced pending the bankruptcy, and prior to proof of debt, to prevent the creditor holding the waiver from taking a dividend on his whole claim from the general assets, and thereafter availing himself of the right resulting from the waiver to proceed against the exempt property.

''As the creditor holding a waiver may proceed to assert his right in a state tribunal pending the proceedings in bankruptcy, it follows that the form his action may take in the state tribunal is of no concern in the bankruptcy court, unless such writs are issued and proceedings had as directly interfere with property passing to the trustee in bankruptcy, or with exempt property not claimed by the bankrupt and in actual custody of the bankruptcy court. * * * Whether the bankrupt could avoid or defeat such contracts was for the state courts to decide, and the issue seems to us to be wholly immaterial in the bankruptcy court.''

In Bank of Mendon v. Mell, (Mo. App.) 172 S. W. 484, 486, which was a replevin on a mortgage given within four months of adjudication, the court said that when the trustee set apart to defendant his exemptions it put the bankrupt ''in possession of what he owned, and it remained unaffected by the bankruptcy proceeding, and consequently subject to the mortgage as fully as if there had been no bankruptcy. * * * We think nothing detrimental to plaintiff can be made out of this. [The adjudication that the mortgage was an unlawful preference.] Manifestly the court was only adjudicating that over which it had jurisdiction. The execution of the mortgage for the property not exempt was an act of bankruptcy. But a conveyance of exempt property could not affect or influence bankruptcy proceedings, nor could such proceedings affect such conveyance; and the only authority of a court of bankruptcy over that class of property is to set apart to the debtor 'what, after a hearing, may be found to be exempt.' * * * The exempt property in controversy having been

restored to the defendant by the bankruptcy court, it retained the incumbrance which he had placed upon it before that court took possession of it. If that incumbrance was valid, under our state law, it may be enforced in our state courts.''

For further cases see Brooks v. Eblen, (Ky.) 106 S. W. 308; In re Stern, 208 Fed. 488; Ingram v. Wilson, 125 Fed. 913; Bowen v. Keller, (Ga.) 60 S. E. 174; Brooks v. Britt-Carson Shoe Co., (Ga.) 65 S. E. 411; Groves v. Osborn, (Ore.) 79 Pac. 500; Lyon v. Herboth, (Wash.) 233 Pac. 24; 2 Rem. Bankruptcy, Section 1106; Id. Section 1108; Lafferty v. Patton, 14 Pa. Dist. 255; Tyler v. Parliman, 14 Pa. Dist. 517; J. Saul & Co. v. Bowers, 117 S. E. (Ga.) 86; Thompson-Ritchie Grocery Co. v. Cary, 135 So. (La.) 707; Schexnailder v. Fontenot, 85 So. (La.) 207.

Whether or not there are other creditors in like situation, and whether they might or ought to be brought into this case, are matters not raised.

I think the judgment should be reversed.

DE GRAFF and GRIMM, JJ., concur in this dissent.